## Case No. 16,566.

UNITED STATES v. TWENTY-FOUR
COILS OF CORDAGE.

[Baldw. 502.] [1]

Circuit Court, E. D. Pennsylvania.  April Term,
1832. [2]

CUSTOMS DUTIES—OMISSIONS FROM MANIFEST—SEA
STORES — SHIP'S TACKLE, ETC. — CONSTRUCTION
OF STATUTE—MERCANTILE TERMS—INFORMATION
OF FORFEITURE.

1. Cordage, ravensduck and sail cloth found on board of a vessel on her return from a voyage, are not sea stores within the forty-fifth section of the collection act of 1799 [1 Stat. 661].

2. If intended for the use of the ship, they are a part of its tackle, apparel or furniture; if not, they are a part of the cargo.

3. Mercantile terms used in a law are to be taken in the sense intended, which is to be ascertained by the laws in pari materia.

4. The words of a law imposing a forfeiture or penalty shall not be construed to embrace a case not within the parts of the law which prohibit the act done, or direct the performance of an act, by the omission of which the penalty or forfeiture is incurred.

[Cited in Cargo Ex Lady Essex, 39 Fed. 767.]

5. On an information against specific articles, as sea stores forfeited, the court cannot adjudge them to be forfeited as a part of the cargo or merchandise, or as a part of the tackle, &c. of the ship.

[Appeal from the district court of the United States for the Eastern district of Pennsylvania.]

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]
[2] [Affirming Case No. 16,573.]

This was an appeal from a decree of the district court [Case No. 16,573], on an information filed by the United States against twenty-four coils of cordage, three bolts of ravensduck, and four pieces of sail cloth, alleged to have been forfeited, by not having been reported on their importation. These articles were found on board the ship Eliza, on her return from a voyage to Cronstadt with a cargo composed partly of similar articles, but those in question were not included in the manifest presented on the entry of the vessel at the customhouse, they were seized as sea stores forfeited by the forty-fifth section of the collection act, for not being reported pursuant to the twenty-third section thereof. The only question of law which arose in the case was whether these articles were to be considered as sea stores within the law.

Mr. Gilpin, U. S. Dist. Atty.

The object of the law was to collect a duty on articles, which, under any circumstances, could become dutiable, by requiring a report of all stores remaining on hand at the end of the voyage; the quantity of cordage taken on board for the use of the ship, was more than was requisite for the voyage which was completed, to which the law refers. They are considered as a surplus, though they may be wanted for another voyage. They were entered on the ship's books as stores for the ship, so considered by the mate and the witnesses, and must be considered as sea stores, unless they are a part of the tackle, apparel or furniture of the ship, as a part of the ship itself. But taken either way, they ought to be reported to the collector, so that he may judge whether they were required for the use of the ship, or were intended for sale; for the intent with which they were taken on board, gives them the character of ship or sea stores, or makes them a part of the cargo. The term "ship or sea stores" does not apply merely to provisions for the crew and passengers, they embrace "anchors, cables and other ship stores." Holt, Shipp. 532; Abb. Shipp. (Ed. 1829) 416. In a mercantile sense they include every thing for the use of the ship or persons on board, in which sense they are used in the law. When the article is in use for the ship as part of her tackle, apparel or furniture, then it is a part of the ship; but till used, it is a part of the ship, or sea stores.

J. S. Smith, for claimants.

No article is subject to duty, unless it is enumerated in the law or comprehended in some term which embraces it by necessary implication, otherwise the article is exempt from duty; so where any thing is expressly made duty free, the exemption goes to whatever comes within the description of the article exempted. The exemption of the ship, her tackle, apparel and furniture, extends to every thing necessary to equip and navigate her as a part of the ship itself. The term "sea stores," as adopted in the act of congress, from general acceptation and usage, applies to those things which are for the use of the persons on board, which are consumed in being used by the crew and passengers. Ship stores for the use of the ship are wholly distinct, not being consumed or destroyed by such use, so these terms are used in the law in plain contradistinction. This being a penal law it must be construed strictly, the information in this case being for not entering these articles as sea stores, cannot be sustained if they are not strictly such; if they are ship stores, and were not intended for the use of the ship, they would be liable to forfeiture as part of the cargo, but not as sea stores. A superfluous quantity does not change the character of the articles, though it might be good ground for the imputation of fraud, whether they are considered as sea or ship stores. Here the information is not against the cordage as merchandise, but as sea stores; the question is not what the mate or witnesses call them, but how they are classed by congress; in Abbott and Holt, anchors, &c. are called ship stores, not marine or sea stores. The sails and tackle of a ship are a part of the ship; though they are removed to the shore, they still remain so, and may be seized for sailors' wages; 1 Sho. 177; the materials for the sails and tackle, which are laid in to meet the contingencies of the voyage, are as much a part of the ship as if they had been or were in use, as well as any spare articles actually made up.

The counsel on both sides entered into a detailed argument on the words and provisions of the twenty-third, twenty-fourth, thirtieth, thirty-fourth, forty-fifth, forty-sixth, fifty-second and sixty-third sections of the collection act in support of their positions, which are not reported. They will be found referred to in the opinion of the court, so far as they were deemed applicable to the case.

BALDWIN, Circuit Justice. These articles were brought into this port in the ship Eliza, from Cronstadt, and not reported by the master in the manifest; they were found on board after it was made out, and seized as forfeited under the forty-fifth section of the revenue law, as "sea stores" not specified in the entry. This is the only ground of forfeiture alleged in the information. The case therefore presents the single question whether these articles are sea stores within the meaning of the section of the act of congress; not being alleged to be a part of the cargo, or merchandise belonging thereto, or consigned to the master, officers or crew. This law does not define or designate what are to be considered as sea stores, as distinguished from articles composing a part

of the tackle, apparel or furniture of the ship, or such as may be necessary or usual to have on board, for the purpose of repairs and emergencies during the voyage, parts of which remain on hand at its termination. In directing the form of the manifest, and the articles to be returned, the law enumerates, among others "the remaining sea stores, if any;" the head under which they are to be entered in the manifest is, "vessel and cabin stores." 1 Story's Laws, 593, 594, § 23 [1 Stat. 644, 645]. In the forty-fifth section prescribing the forfeiture, they are named as "sea stores" generally. 1 Story's Laws, 612 [1 Stat. 661]. If we were to decide on the meaning of these words in a charter party or a policy of insurance, we might find no difficulty in ascertaining it, by the custom of merchants and the usage of trade, and should adopt the meaning and practical definition thus given to them; presuming that the parties intended to use them in the sense in which they had been and were used, received and accepted among merchants. But when the words have received a legal and settled interpretation, usage alone would not overrule it. So if the same words are found in a law, and they are used in a sense, denoting the intention of the legislature, to give them an application and meaning, different from that which had been adopted by mercantile usage, the court must so consider the law.

"Admitting that the words 'sea stores,' in a mercantile instrument, comprehend all those accompaniments of a ship that are essential in its present occupation (though not direct constituents of a ship), without which it cannot execute its mission. or perform its functions" it by no means follows, that the words would receive the same construction in an act of parliament. 1 Hagg. Adm. 122, 124; 4 D. 206, &c.; Marsh. Ins. 626, 627; 1 D. 127, 132; 1 Dow, 32; 3 Dowl. 58, 60. They may be used in a much more restricted sense, which will be taken not merely from particular laws in which they may be found, but from other laws on similar or analogous subjects, which may serve as a key to unlock the law in question; such appears to be the law of July 20, 1790, for the government and regulation of seamen in the merchant service. 1 Story's Laws, 102 [1 Stat. 131]. In the third section, it enumerates the several particulars. in which a ship may be defective after the voyage is begun, and before she has left the land. "in her crew, body, tackle, apparel, furniture, provisions or stores." It directs a report to be made, of "what additions of men, provisions or stores, or what repairs or alterations in the body, tackle or apparel, may be necessary," and again uses the words "men," "provisions," "stores," "repairs or alterations." In the sixth section, prescribing a remedy for seamen to recover their wages, it directs a summons to the master to show cause why process

should not issue against "the ship, her tackle, furniture and apparel." The eighth section directs, that every ship bound on a foreign voyage, shall be provided "with a medicine chest," the ninth section prescribes the quantity of water, meat and bread, which shall be provided for each person on board, over and besides such other "provisions, stores and live stock, as shall by the master or passengers be put on board," and in like manner for shorter or longer voyages. Taking these provisions of the different parts of this law together, there is an obvious discrimination, between those articles which form a part of the body, tackle, apparel or furniture of a ship, and those intended for the health and sustenance of the crew or passengers; between those necessary for the ship itself, and those who navigate, or are transported in her; between articles which, from their nature, are consumed in their use, and those which become merely deteriorated, or so injured by use, as to require their being repaired or replaced by new materials. The words of the ninth section are a definition of stores, not applicable to any articles laid in for the use of the ship itself, which are not put on board by passengers; they are something over and besides medicine, water, beef, bread or provisions, which are specified in the same clause. From the juxta-position of the word "stores" between provisions and live stock, and their being noticed as put on board by the master "or passengers," they must be considered as intended to refer to other stores, intended for the same purpose and use, as the enumerated articles, provisions and live stock. It would be a very strained, if not a forced construction, to interpret the word "stores," in this section, as referring to the articles on board, necessary or usually taken on board to meet the exigencies of the voyage, for the repairs of the ship, or her security while performing it; this would be to read it, "such other provisions, cordage, duck, sail-cloth or live stock, as shall by the master or passengers be put on board," and thus exclude liquors, groceries, and other articles of comfort, luxury, or fancied necessity, as may have been provided for the officers, passengers and crew of the ship. Such is obviously not the meaning of the law, or the just and legal interpretation of the words used in this section; they clearly exclude the articles in question, they as clearly include all stores put on board, for the purpose of consumption, by the persons in the ship; and they must be taken to have been used in the same sense in the other sections of the same law, in the absence of any words or expressions denoting the intention of the legislature, to give any different meaning or application to them.

In ascertaining the legislative meaning of the term "remaining sea stores," as used in the twenty-third section of the revenue law, it is found to be in perfect accordance with the ninth section of the act of 1790, and plain-

ly, if not necessarily, refers to it. It directs a manifest of the cargo to be made out, "together with the name or names of the passengers, distinguishing whether cabin or steerage passengers, or both; their baggage and packages belonging to each, together with an account of the remaining sea stores, if. any." To the question, what are such sea stores? a plain answer is furnished; such articles of provision and stores, as were put on board by the captain or passengers, and not consumed on the voyage, but remaining on hand at its termination. The words "vessel and cabin stores," in the form of the manifest, are not inserted for the purpose of introducing any distinct class or kind of sea stores. but merely as the head, under which those designated in the preceding part of the section should be entered on the manifest, as the "remaining sea stores." These views of the law are very fully apparent in the thirtieth section, prescribing the form and requisites of the oath of the master to the manifest. "And I do further swear, that the several articles specified in the said manifest, as the sea stores for the cabin and vessel, are truly such, and were bona fide put on board for the use of the officers, crew and passengers thereof; and are intended to remain on board, for the consumption of said officers and crew." If the ship has on board wines, spirits or teas. the captain is, by the same section, required to report the quantity and kind on board, as sea stores, to enter them in the manifest under that head. and to superadd his oath, as in the case of other sea stores on board.

As it cannot be pretended, that the duty of the master under the twenty-third section, is broader than the oath required under the thirtieth, we must take them to mean that the sea, the vessel and cabin stores remaining unconsumed, shall be entered in the manifest, and sworn to, and were such and such only as were provided for the consumption of those on board during the voyage, and should remain on board after its termination, or on a new one. It is therefore clear, that these sections of the law do not embrace those stores which are intended for the use of the ship itself, distinct from those provided for the officers, crew and passengers, among which the articles in question cannot possibly be comprehended. It only remains to consider the forty-fifth section, under which these articles are claimed by the United States as forfeited. This section is professedly introduced, in order "to ascertain what articles ought to be exempt from duty, as the sea stores of a ship;" for this purpose the master is directed to specify them in the manifest, "as the sea stores thereof, and in the oath declare that they are truly such. and are not intended for merchandise or sale, whereupon the said articles shall be free from duty." This clause evidently refers to the preceding sections of the law, the one requiring the manifest. the other the oath prescribed as to the articles therein specified as the stores of the ship; but

it neither embraces any other articles, by any enumeration, reference, or the use of any words admitting of such a construction. The proviso creating the forfeiture, refers to the same subject matter: "and if any other, or greater quantity of articles, are found on board of such ship or vessel as sea stores, than are specified in such entry," or be landed without a permit, "all such articles shall be forfeited and seized." Though named in the various parts of the law, as the "remaining sea stores," "vessel and cabin stores," the sea stores of a ship or vessel, "or sea stores," their meaning and application is the same as to all these articles put on board by the captain or passengers for their use, or the use of the officers and crew, and intended for consumption on board, they are duty free if entered and verified according to the twenty-third and thirtieth sections of the law. But if the articles, or the full quantity of any given ones on board, are not entered and sworn to, or are landed without permit, they are forfeited; this is consistent with the declared object of the forty-fifth section. It creates the forfeiture, as a punishment for the omission of the duties previously prescribed; to give it any other construction, would be to adjudge a forfeiture of an article, for not doing an act in relation to which the law did not enjoin any duty, and inflict the punishment, when no offence had been committed. By no just construction can the penalties of the law be incurred. where no prohibited act has been done, and no enjoined one omitted. The penal provisions of a law cannot be made broader than the directory or prohibitory ones, and we cannot declare an article to be forfeited as sea stores. for not being entered and sworn to, unless it is one directed to be so done by some other part of the law. There is no provision in it, which either expressly, or by plain legal intendment. brings the articles in question within it, all the words used can be fully satisfied, without embracing them, and they were obviously intended only for such sea stores. as were taken on board for the use of the officers, crew and passengers.

The district attorney has placed much reliance on the seventh and eighth sections of the English statute of 1 and 2 Geo. IV., c. 76, in which "anchors, cables, and other ships' stores, materials, merchandize, sea and marine stores," are enumerated together as forming the same class of articles; but although that may be considered as the sense in which they are used, and must be taken in and by that particular act of parliament, it can have no bearing on an act passed more than twenty years before, even in England. It is no evidence that such was the legal meaning or acceptation of the words by the common law, but is rather to be considered as a mere statutory provision.

As no doubt can be entertained about the meaning of the act of congress on which this information is made. it has not been deemed necessary to examine the meaning and re-

ceived acceptation of the terms, "sea or ship stores," in mercantile instruments, or according to commercial usage; they are undoubtedly more comprehensive than by the terms or meaning of the laws referred to. It is enough for the decision of this case, that the articles in question are not brought within either the directory, or the penal provisions of the collection law, as sea stores; whether they are to be considered as a part of the ship, its body, tackle, apparel or furniture, being intended for such use; or whether by their not having been so applied, they can be considered as a part of the cargo, and as such subject to forfeiture or penalty, under any other provisions of the law, is unnecessary to inquire. Neither is the object for which they were purchased or retained on board, or their quantity, a material subject of inquiry; if purchased for sale, they would be deemed goods, wares and merchandize; if the quantity was excessive, it might be evidence of a fraud subjecting the party to a forfeiture or penalty, at all events the excess would be liable to duty. Having been libelled for being found, on board, as sea stores not entered in the manifest, every point in the case is disposed of, by considering them as not embraced within the twenty-third, thirtieth or forty-fifth sections of the law, as ship, vessel, cabin, or sea stores.

The decree of the district court awarding restitution to the claimants is therefore affirmed.