UNITED STATES *v.* GERMANIA IMPORTING Co. (No. 1770).[1]

1. TREASURY REGULATIONS, EFFECT OF.
    While it was within the power of the Treasury Department to keep in force its regulations pursuant to section 5 of the act of August 24, 1912 (Panama Canal act), after the time that the tariff act of 1913 went into effect and until the promulgation

---

[1] T. D. 37267 (33 Treas. Dec., 21).

of its regulations pursuant to subsections 5 and 6 of paragraph J of section 4, tariff act of 1913, it was not within its power to keep them in force in such manner as to extend the right of free entry to goods not within the terms of the act of 1913.

2. STIPULATION, EFFECT OF.

A stipulation that the merchandise in controversy had been used in a certain manner will be taken to mean that it had been so used prior to liquidation, and not simply prior to the date of the stipulation.

3 ESTOPPEL.

Where the parties made stipulation as to a certain state of fact, a letter from the Treasury Department to the collector of customs, stating that that question would not be raised in the case, did not estop the Government from making use of the stipulation's agreement as to that question.

4. CONSTRUCTION, SUBSECTION 5 OF PARAGRAPH J OF SECTION 4, TARIFF ACT OF 1913—"MATERIALS NECESSARY FOR THE OUTFIT AND EQUIPMENT."

In subsection 5 of paragraph J of section 4, tariff act of 1913, the words "materials necessary for the outfit and equipment" mean the outfit and equipment of "naval vessels or other vessels of the United States, vessels built in the United States for foreign account and ownership, or for the purpose of being employed in the foreign or domestic trade." They refer to *all* such vessels, and not just those that are being outfitted and equipped for the first time.

5. LINOLEUM FOR UNITED STATES VESSELS.

Linoleum was entered after the tariff act of 1913 went into effect but before the promulgation of the Treasury Department's regulations pursuant to subsections 5 and 6 of paragraph J of section 4 of said act. Application for free entry under section 5 of the act of August 24, 1912 (Panama Canal act), was made in the manner prescribed by the department's regulations pursuant to said act. The linoleum was assessed as linoleum under paragraph 276, tariff act of 1913. The importers protested, claiming free entry under the tariff act of 1913, and showed that the linoleum was used on vessels belonging to the United States. It was entitled to free entry under subsection 5 of paragraph J of section 4, tariff act of 1913, as outfit and equipment for vessels of the United States.

## United States Court of Customs Appeals, May 21, 1917.

APPEAL from Board of United States General Appraisers, Abstract 40117.

[Affirmed.]

*Bert Hanson*, Assistant Attorney General, for the United States.
*Hatch & Clute* (*Edward S. Hatch* and *Vincent P. Donihee* of counsel) for appellees.

[Oral argument May 1, 1917, by Mr. Hanson and Mr. Donihee.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The Germania Importing Co., in December, 1913, entered at the port of New York a quantity of linoleum which was claimed to be free of duty, and application, accompanied by a bond, was made under section 5 of the act of August 24, 1912, known as the Panama Canal act, for free entry as outfit and equipment of vessels of the Navy Department, the application stating that the said articles would not be used for any other purpose than that set forth therein. The collector, however, assessed the importation under paragraph

276 of the act of 1913 as linoleum at the appropriate rate. The sole question in the case is whether the goods are entitled to free entry, and a history of the proceedings in the case is essential to a correct understanding.

At the time free entry was claimed on the importation no regulation had been made under the act of 1913, hereinafter referred to, but the regulations under the act of 1912, the Panama Canal act, still remained apparently in force. Subsequently, and in February, 1914, the present regulations found in T. D. 34150 were adopted. The importers forwarded an affidavit to the collector of customs, in which they declared that the merchandise had been delivered to the New York Navy Yard for use in the outfit and equipment of vessels of the United States. The subject matter was taken up and correspondence was had between the collector of the port and the Secretary of the Treasury, and under date of February 16, 1915, the Secretary of the Treasury addressed the following letter relating to the subject matter of this suit to the collector at New York:

As to the classification of the said linoleum, the department has held that certain linoleum imported in rolls constituted an article of outfit and equipment under the regulations in T. D. 32956 under the Panama Canal act, and perceives no reason for changing that classification under the corresponding provisions of the tariff act of October 3, 1913.

The regulations in T. D. 32956, however, permitted the free entry of renewals or replacements of articles of outfit and equipment, while the present regulations, T. D. 34150, confine free entry of articles of outfit and equipment to vessels under construction. The question whether the linoleum was used on vessels already in commission or on vessels under construction will not be raised in this case, however, because although the linoleum was imported after the tariff act of October 3, 1913, took effect, it was imported while the regulations under the Panama Canal act were still in force, so far as applicable, and the question is one of interpretation, in the absence of an express declaration in the law.

It is necessary, however, to show that the linoleum was used on vessels of one of the classes named in the law, especially in view of the intimation from the navy yard, to which you refer, that some of the linoleum was not used on vessels at all, but for shore purposes. The general statement proposed by the navy yard, if a renewal of the application shall be made, "that the material in question was received and all used in United States navy yards by the United States Navy" would not, therefore, meet one of the conditions of free entry expressly provided in the law.

Referring to the ruling of the department in its letter of May 3, 1913, and the department's authorization in its letter of April 9, 1914, cited by you, I call attention to the fact that, although in those cases it was not required that particular vessels be specified, yet it was clearly indicated that use of the merchandise on naval vessels must be shown, thus precluding the free entry of such merchandise for use in buildings or for other shore purposes.

The importers protested, claiming free entry under the act of 1913, and sought to ascertain from the Government officials cognizant of the facts what portion of this linoleum had been used on the vessels of the Navy, and failed to secure the information by this method. But subsequently the Assistant Attorney General and the attorneys

for the importers agreed upon a stipulation setting out the facts, which, in substance, were stated to be that—

Ninety-five per cent of the linoleum in question, delivered at the United States Navy Yard, New York, under the Snellenburg contract, was used upon vessels belonging to the United States Government, and that 5 per cent thereof was used in various buildings at navy yards and naval stations.

That such of the linoleum as was so used on such vessels was used solely as deck covering; that is, to cover iron or steel decks in such places where the deck is not exposed to the weather, as in officers' mess rooms, crew's messing spaces, officers' staterooms, etc.

That all of the linoleum delivered under said Snellenburg contract was used upon vessels after they had been placed in service; that is, none of it was used on newly constructed vessels.

The Board of General Appraisers held that the goods were entitled to free entry as repairs of naval vessels, and from this holding the Government appeals.

The two subsections in question are subsections 5 and 6 of paragraph J of section 4 of the act of 1913, which we quote:

J. Subsection 5. That all materials of foreign production, which may be necessary for the construction of naval vessels or other vessels of the United States, vessels built in the United States for foreign account and ownership, or for the purpose of being employed in the foreign or domestic trade, and all such materials necessary for the building of their machinery, and all articles necessary for their outfit and equipment, may be imported in bond under such regulations as the Secretary of the Treasury may prescribe; and upon proof that such materials have been used for such purposes no duties shall be paid thereon.

J. Subsection 6. That all articles of foreign production needed for the repair of naval vessels of, or other vessels owned or used by, the United States and vessels now or hereafter registered under the laws of the United States may be withdrawn from bonded warehouses free of duty, under such regulations as the Secretary of the Treasury may prescribe.

It will be noted that in the letter of the Secretary of the Treasury linoleum of the character of that here involved is by the department regarded as an article of outfit and equipment under the Panama Canal act, and that the Secretary perceives no reason why that classification should not be given under the corresponding provisions of the act of 1913. The Secretary also contends in this letter that subsection 5 relates only to outfit and equipment which are imported for use upon vessels undergoing construction or on completion of construction; but indicates a willingness to waive proof upon that subject, but insists upon proof of the use of the linoleum in some vessels of the class named. This requirement was met by the stipulation. That the linoleum was used upon vessels of the United States to the extent of 95 per cent is conceded by this stipulation, and that the linoleum was not used upon vessels under construction is also a conceded fact, so that we have to determine what force is to be given to the statement contained in the letter of the Secretary of the Treasury that the question of whether linoleum was used upon vessels

already in commission or on vessels under construction would not be raised in the case, and secondly whether, if it is open to the Government to raise the question, the correct construction excludes equipment of vessels already in commission.

The Secretary of the Treasury in his letter seems to proceed upon the idea that as no regulations had been made under the tariff act of 1913, when the importation took place, the importers were entitled to proceed under the regulations already in existence under the Panama Canal act, which did not limit the outfit and equipment entitled to free entry to such as was used on vessels under construction. While the Secretary might with marked propriety waive any informality in the entry, it is obvious that he could not, and perhaps did not intend to, extend the right of free entry to goods not within the terms of the act of 1913, for this would have been an attempt to legislate rather than to regulate proceedings to be had by the importers to entitle them to a right accorded by statute. In other words, if the statute of 1913 failed to give the right of free entry of this linoleum when used upon vessels already in commission, it was not within the province of the Secretary of the Treasury to extend the free-list provision by any order of his own if made directly as an order.

If it be urged that the Government ought to be precluded now from asserting a contrary position from that taken by the Secretary of the Treasury in his letter to the collector of customs, a sufficient answer can be found in the fact that the importers have in no way been misled to their prejudice by this letter, so far as the assertion of facts is concerned, for it is obvious that the question was deemed of importance by both the Assistant Attorney General and the counsel for the importers, as the fact is incorporated in the stipulation that all the linoleum delivered "was used upon vessels after they had been placed in service; that is, none of it was used on newly constructed vessels," so that it is manifest that when the case went to hearing, both parties conceived that this important question had been submitted for a decision.

The provisions embodied in section 5 of the act of August 24, 1912, known as the Panama Canal act, read as follows:

That all materials of foreign production which may be necessary for the construction or *repair* of vessels built in the United States and all such materials necessary for the building or repair of their machinery and all articles necessary for their outfit and equipment may be imported into the United States free of duty under such regulations as the Secretary of the Treasury may prescribe.

As the provision for materials necessary for repair of vessels and necessary for the repair of machinery are not in terms provided for by subsection 5 of paragraph J of section 4, act of 1913, there would be some apparent force in the suggestion that as Congress omitted

the provision for such repairs, it would lead to the conclusion that subsection 5 was designed to relate solely to vessels of new construction.   But a better view is that Congress saw fit to subdivide this provision of the act of 1912 by providing in such section 5 for the material to be used in construction of vessels and in the building of their machinery and providing in subsection 6 for articles used in the repair of vessels.   But the provision for the outfit and equipment was left in the same terms in subsection 5 as they appeared in the Panama Canal act.   The provision for outfit and equipment under the Panama Canal act would clearly cover all vessels built in the United States, the words "outfit and equipment" relating back to that expression and not being restricted to those which were being outfitted for the first time.   In the new provision there is no reason for saying that subsection 5 should not have the same construction. "All materials necessary for the outfit and equipment" of what? Naval vessels or other vessels of the United States, or vessels built in the United States for foreign account and ownership or for the purpose of being employed in the foreign and domestic trade.   These are the vessels referred to in the term "articles necessary for their outfit and equipment."

This view is emphasized by the fact that in subsection 6 the same general purpose which prevailed in the Panama Canal act appears to provide for the introduction free of duty of the repairs of vessels, but not including therein provision for outfit and equipment of vessels in commission.   This by no means indicates to our minds that there was foundation in reason for discriminating in admitting the free importation of outfit and equipment, but on the contrary the inference is that it was understood that the provision of subsection 5 provided for such free admission the same as had the corresponding provision in the act of 1912.   It would seem, therefore, that if the Secretary of the Treasury has placed the correct construction upon the provision for outfit and equipment, and that linoleum imported in rolls for the purpose of being used upon vessels such as these is outfit and equipment, it would follow that these goods were entitled to free entry.   We agree that such linoleum is outfit and equipment.

The point is made that, as the liquidation occurred in May, 1915, and the stipulation bears date April 15, 1916, the statement that 95 per cent of the linoleum in question delivered under the Snellenburg contract was used upon vessels belonging to the United States Government does not show that it was used prior to liquidation.   We think this is too technical a construction of the stipulation, and is obviously not what was intended to be agreed to between the parties. When construed in connection with the letter of the Secretary of the Treasury, it is obvious that the stipulation was made for the purpose of meeting the issue of fact which the Secretary had declared

was essential, and had reference to the issue of fact. Any other construction would render the stipulation entirely meaningless.

The Board of General Appraisers found in favor of free entry, and the decision to that effect is sustained.

*Affirmed.*