TOLEDO SHIPBUILDING· Co. *v.* UNITED STATES (No. 1871).[1]

1. CONSTRUCTION, SECTION 4, PARAGRAPH J, SUBSECTION 5, TARIFF ACT OF 1913—
   MATERIALS FOR THE CONSTRUCTION OF VESSELS—MACHINERY—OUTFIT AND
   EQUIPMENT.
   Paragraph J, subsection 5, tariff act of 1913, following the policy of three previous tariff acts, treats the vessel, its machinery, and its outfit and equipment as three independent entities. This is not consistent with the idea that Congress regarded marine engines and· every article of outfit and equipment as materials for constructing vessels. The machinery and outfit and equipment of a vessel can not be considered as materials for building it; articles of outfit or equipment can not be classified as machinery; and nothing which is machinery comes within the description of outfit and equipment. Materials for the construction of vessels means such as are used by shipbuilding yards. . The machinery of a vessel necessarily includes engines which propel it.

2. AUXILIARY ENGINES FOR AMERICAN SAILING VESSELS.
   Engines imported for installation in American-built sailing vessels, to make them point closer to the wind and to propel them when the wind fails, are not classifiable under section 4, paragraph J, subsection 5, tariff act of 1913, as either materials necessary for the construction of such vessels or as articles necessary for their outfit and equipment. The decision of the Board of United States General Appraisers sustaining the collector's classification of them as articles of metal under paragraph 167 is affirmed.

· United States Court of Customs Appeals, April 13, 1918.

APPEAL from Board of United States General Appraisers, Abstract 41244.

[Affirmed.]

*Sharretts, Coe & Hillis* for appellant.
*Bert Hanson,* Assistant Attorney General, for the United States.

[Oral argument Apr. 13, 1918, by Mr. Sharretts and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Six imported marine engines were classified by the collector of customs at Cleveland, Ohio, as articles of metal and assessed for duty at 20 per cent ad valorem under paragraph 167 of the tariff act of 1913, which paragraph, in so far as pertinent, reads as follows:

Articles or wares not specially provided for in this section; * * * if .composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, * * * and whether partly or wholly manufactured, 20 per centum ad valorem.

The importers protested that the engines were not dutiable and claimed that they were entitled to free entry under section 4, paragraph J, subsection 5, of said. act, which provision is as follows:

That all materials of foreign production which may be necessary for the construction of naval vessels or other vessels of the United States, vessels built in the United States for foreign account and ownership, or for the purpose of being employed. in the foreign or domestic trade, and all such materials necessary for the building of their machinery, and all articles necessary for their outfit and equipment, may be

---

[1] T. D. 37609 (34 Treas. Dec., 355).

imported in bond under such regulations as the Secretary of the Treasury may prescribe; and upon proof that such materials have been used for such purposes no duties shall be paid thereon.

The Board of General Appraisers overruled the several protests interposed and the importers appealed.

The engines are complete marine engines of 320 horsepower, and are apparently of the type which develops energy by exploding the gases derived from mineral oils. They were imported in bond by the Toledo Shipbuilding Co. for installation, and were actually installed on six four-masted sailing schooners constructed for the Standard Oil Co. of New Jersey. The engines were installed to make the schooners point a little closer to the wind than was possible for the sails alone, and to propel the vessels when lack of wind rendered the sails of no avail.

The importers contend that the engines are entitled to free entry, first, because they are materials necessary for the construction of vessels; second, because, if they are not such materials, they are at least articles necessary for the outfit and equipment of the special kind of vessel on which they were installed.

A vessel ready for operation implies, of course, a completed hull, completed appliances in place for propelling it, and the finished articles on board necessary for navigation, protection, and the efficient performance of the functions for which the vessel is designed. The engines which supply the power to a vessel, the nautical instruments and signal lights which enable it to move with comparative safety on its course, the boats and life-saving apparatus which afford to its crew and passengers some measure of protection from the perils of the sea, the anchors and anchor chains which hold it fast when not in motion, are, it is true, complementary of the vessel; and if vessels ready for use were dutiable might well be considered not as separate entities, but as essential parts thereof. The provision under discussion, however, does not contemplate a vessel ready for use, but a vessel to be constructed, and the things just enumerated, parts though they may be of a vessel in commission, can no more be regarded, in our opinion, as building materials than could the furniture of a house or the dynamos which produce the current to light it.

The phrase "materials for the construction of vessels" originally meant such as were used by shipbuilding yards. It did not include articles of outfit or equipment, and of course excluded power-producing engines and their machinery. In our opinion that meaning still persists, and notwithstanding the coming into use of steam as a motive force is limited to such things as are employed in constructing the hull and its fittings. Confirmatory of that view is the significant fact that for construction purposes the tariff acts 1894, 1897, and 1909, the

Panama Canal act of 1912, and the Treasury regulations of 1899 and 1909 carefully distinguish between the vessel, its machinery, and its outfit and equipment, and provide for them as distinctly different things. Tariff act 1894 (sec. 7); tariff act 1897 (sec. 12); tariff act 1909 (sec. 19); Treasury regulations 1899 (art. 804); Treasury regulations 1909 (arts. 725–726).

In section 4, paragraph J, subsection 5, the vessel, the product of the shipyard, its machinery, the product of the machine shop, and its outfit and equipment, the product of various industries, are all treated as independent entities; and that manner of dealing with them, following as it did the policy of three previous tariff acts, is not, we think, consistent with the idea that Congress regarded marine engines and every article of outfit and equipment, from anchors to signal lights, as materials for constructing vessels.

Indeed, if such things of ultimate use as completed machinery and articles of outfit or equipment can, under the law in force, be classified as materials for building vessels, then, as a logical sequence the same tariff status must be accorded to the completed hull, and that would simply mean the conversion of the country's shipyards into mere assembling plants—a result wholly alien to the purpose of the enactment, which was manifestly designed to favor, not prejudice, the industry, as was pointed out by Judge De Vries in United States v. Outerbridge. The reasoning of the Outerbridge case as to the engines there involved is just as applicable to the engines here in question, and we must rule here, as we ruled there, that engines are not materials for the construction of vessels. As the engines are complete machines they can not, of course, be classified as materials for building machinery. United States v. Outerbridge & Co. (7 Ct. Cust. Appls., 223; T. D. 36511).

We now come to the appellant's second contention and the consideration of whether engines which furnish auxiliary power to sailing craft should be classified as outfit or equipment. Paragraph J, subsection 5, contemplates the construction of a vessel, the building of its machinery, and the outfitting and equipping of the same on completion of the structural work. Evidently, therefore, the construction of the vessel must be construed to be one thing, the building of its machinery another, and the outfitting and equipping of it something else. In conformity with that interpretation of the statute we have already held that the machinery and outfit and equipment of a vessel can not be considered as materials for building it. It follows as a corollary of that holding that articles of outfit or equipment can not be classified as machinery of the vessel, and conversely that nothing which is machinery of the vessel comes within the description of outfit and equipment.

We think that as commonly understood the machinery of a vessel necessarily includes the appliances which propel it, and that the

engines in controversy are clearly within that category inasmuch as they are part of the motive power of the schooners on which they were installed. It is true that the schooners rely mainly on the wind to force them through the water, and that the engines provide nothing more than an auxiliary motive power which is not called into action except as an aid to the sails or when the wind fails. Indeed, it may be assumed that craft such as we are talking about mainly depend on their sails for propulsion, and that they could not be efficiently or economically propelled for a whole voyage or any considerable part of it by the unaided force of engines of 320 horsepower. Whether, however, the engines aid the sails or drive the vessel when the sails are temporarily unavailable and whether or not such engines are economically and efficiently useful as a supplementary force only, the fact remains that their nature must be determined by the character and not the extent of the work which they perform. They are power-producing machines which have no use other than that of propelling the vessels on which they are placed, and therefore they belong to the collection of appliances commonly known as machinery of the vessel. As they are not materials for constructing vessels, or materials for building the machinery of vessels or articles of outfit and equipment of vessels, they are not entitled to free entry under the provision relied upon in the protest.

The decision of the Board of General Appraisers is *affirmed.*