H. E. WARNER, TRUSTEE, AMERICAN MAIL LINE, LTD. *v.* UNITED STATES (No. 4284) [1]

---

[1] C. A. D. 136.

■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

United States Court of Customs and Patent Appeals, June 24, 1940

■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■

*Ira L. Ewers (Treadwell & Laughlin, Reginald S. Laughlin,* and *Robert A. Grantier* of counsel) for appellant.

*Webster J. Oliver,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *James F. Donnelly,* junior attorney, of counsel), for the United States.

[Submitted on briefs April 9, 1940]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, holding the cost in a foreign port, Shanghai, China, of labor and materials for painting the hull, several of the ship's accessories, and sections of the engine and steward's departments of the S. S. *President Jefferson,* a vessel owned by the American Mail Line, Ltd. and documented under the laws of the United States to engage in foreign and coasting trade, dutiable at an ad valorem rate of duty of 50 per centum as "expenses and repairs," and certain "crockery," such as plates, cups, and saucers purchased in such foreign port, dutiable as "equipment" for such ship at 50 per centum "on the cost thereof," under section 466 of the Tariff Act of 1930.

Section 466 reads:

SEC. 466. EQUIPMENT AND REPAIRS OF VESSELS.

Sections 3114 and 3115 of the Revised Statutes, as amended by the Tariff Act of 1922, are amended to read as follows:

Sec. 3114. The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country; and if the owner or master of such vessel shall willfully and knowingly neglect or fail to report, make entry, and pay duties as herein required, such vessel, with her tackle, apparel, and furniture, shall be seized and forfeited. For the purposes of this section, compensation paid to members of the regular crew of such vessel in connection with the installation of any such equipments or any part thereof, or the making of repairs, in a foreign country, shall not be included in the cost of such equipment or part thereof, or of such repairs.

Sec. 3115. If the owner or master of such vessel furnishes good and sufficient evidence—

(1) That such vessel, while in the regular course of her voyage, was compelled, by stress of weather or other casualty, to put into such foreign port

and purchase such equipments, or make such repairs, to secure the safety and seaworthiness of the vessel to enable her to reach her port of destination; or.

(2) That such equipments or parts thereof or repair parts or materials, were manufactured or produced in the United States, and the labor necessary to install such equipments or to make such repairs was performed by residents of the United States, or by members of the regular crew of such vessel,

then the Secretary of the Treasury is authorized to remit or refund such duties, and such vessel shall not be liable to forfeiture, and no license or enrollment and license, or renewal of either, shall hereafter be issued to any such vessel until the collector to whom application is made for the same shall be satisfied, from the oath of the owner or master, that all such equipments and repairs made within the year immediately preceding such application have been duly accounted for under the provisions of this and the preceding sections, and the duties accruing thereon duly paid; and if such owner or master shall refuse to take such oath, or take it falsely, the vessel shall be seized and forfeited.

The importer—appellant—protested, claiming that the cost of the labor and materials for painting is a cost incurred for the preservation of the vessel and is not within the meaning of the language "expenses of repairs," as used in section 466, *supra*, and that the cups, saucers, and plates are nondutiable consumable supplies necessary for the use and comfort of the crew and passengers aboard the ship and are not "equipment" within the meaning of that term as used in that section.

There is no contention here that it was necessary, owing to "stress of weather or other casualty, to put into such foreign port [Shanghai, China] and purchase such equipments, or make such repairs, to secure the safety and seaworthiness of the vessel to enable her to reach her port of destination," or that such crockery and paint were manufactured or produced in the United States, or that the labor necessary to make such repairs was performed either by residents of the United States or by members of the regular crew of such vessel.

Section 446 of the Tariff Act of 1930, claimed by counsel for appellant to be pertinent to the issues in the case, reads:

SEC. 446. SUPPLIES AND STORES RETAINED ON BOARD.

Vessels arriving in the United States from foreign ports may retain on board, without the payment of duty, all coal and other fuel supplies, ships' stores, sea stores, and the legitimate equipment landed and delivered from such vessel shall be considered and treated as imported merchandise: *Provided*, That bunker coal, bunker oil, ships' stores, sea stores, or the legitimate equipment of vessels belonging to regular lines plying between foreign ports and the United States, which are delayed in port for any cause, may be transferred under a permit by the collector and under customs supervision from the vessel so delayed to another vessel of the same line and owner, and engaged in the foreign trade, without the payment of duty thereon.

The contentions of counsel for appellant are stated in their brief as follows:

1. The cost of painting the hull, several of the ship's accessories, several sections of the Steward's Department, and several sections of the Engine Department is not within the meaning of the term "expenses of repairs," as used in Sec. 466 but is a cost incurred for the purpose of preserving the vessel in a proper state and making repairs unnecessary.
2. The cups, saucers, and plates purchased are not "equipments" of the vessel, within the terms of Sec. 466, but are non-dutiable stores or supplies of the vessel.

In the case of *E. E. Kelly & Co.* v. *United States*, 17 C. C. P. A. (Customs) 30, T. D. 43322, this court, relying upon the common meaning of the term "repairs" and also upon the doctrine of legislative approval of judicial decisions, held that expenses incurred in a foreign port (Shanghai, China) for labor for painting portions of the steamship *President McKinley*, which was documented under the laws of the United States to· engage in foreign trade, were dutiable at 50 per centum of such cost under section 466 of the Tariff Act of 1922, the provisions of which, so far as the issues here are concerned, are identical with the provisions of section 466 of the Tariff Act of 1930.·

It appeared in that case that the paint was purchased in Seattle, Wash., and the sole issue there presented related to the cost of applying the paint by foreign labor.

It was there argued by counsel for appellant, as it is in the instant case, that the paint was applied for the preservation of the ship; that, therefore, the labor performed in applying the paint could not be classified under the statutory term "expenses of repairs"; and that the term "repairs," as used in "nautical circles;" did not include the expense of painting a ship or portions thereof for the purpose of maintenance or preservation.

In answer to the latter contention we stated that if the term ·"repairs" had a restricted meaning in the trade and commerce of the United States which differed from its common meaning, it was incumbent upon appellant to establish that fact by a preponderance of the evidence and that appellant had failed to do so.

In the case of *American Mail Line, Ltd.* v. *United States*, 24 C. C. P. A. (Customs) 70, T. D. 48377, we held that the decision in the case of *E. E. Kelly & Co.* v. *United States, supra*, was *stare decisis* of the common meaning of the term "repairs," as used in section 466 of the Tariff Act of 1930; that the term "repairs," as used in that section, was intended by the Congress to be interpreted in accordance with its common meaning and, therefore, was not subject to proof of com mercial designation.

It is here suggested by counsel for appellant that our decisions in the cases of *E. E. Kelly & Co.* v. *United States* and *American Mail Line, Ltd.* v. *United States* should be overruled, so far as they held that the common meaning of the term "expenses of repairs," as used in section 466 of the Tariff Acts of 1922 and 1930, included the cost of foreign labor and material for the painting of a ship or portions thereof for the purpose of maintenance or preservation, and many authorities are cited and reviewed by counsel for appellant which, it is contended, support their views.

We have given careful consideration to the authorities cited by counsel for appellant and the arguments presented by them, but are of opinion that our decisions in the cases of *E. E. Kelly & Co.* v. *United*

*States* and *American Mail Line, Ltd.* v. *United States* are sound, and are controlling of the issue here as to the dutiable status of the costs of labor and materials for painting the vessel, the *President Jefferson*.

The next issue requiring our consideration is whether the plates, cups, and saucers, designated as "crockery," are dutiable under the provision for "equipments," contained in section 466 of the Tariff Act of 1930.

It is contended by counsel for appellant that the plates, cups, and saucers were purchased for the convenience and comfort of the passengers and crew on board the vessel; that they are "consumable supplies"—"sea stores"—and were not intended by the Congress to come within the term "equipments," as used in section 466, *supra*. Counsel further contend that "In a pamphlet issued by the United States Navy Department, entitled 'Classification Index of Naval Stores and Material, 1932,' " plates, cups, and saucers like those here involved are classified as consumable supplies, rather than as equipment for a vessel; that, in accordance with such classification by the Navy Department, "the term, 'equipments,' in maritime usage, pertains only to articles which are intimately connected with the operation of the vessel or to articles used as life-saving devices"; and that as plates, cups, and saucers are broken, owing either to "heavy weather," or to handling by the passengers and crew of the vessel for whose comfort and convenience they were purchased, they are consumable supplies, rather than "equipments," as that term is used in section 466, *supra*.

As we understand the views of counsel for appellant they are that the term "equipments," as used in section 466, *supra*, relates only to such articles as are designed for use and used in connection with the "navigation, propulsion, operation, or safety of a vessel," and does not include any article which is designed and used solely for the accommodation of the passengers and crew aboard such vessel, and that all such articles are consumable supplies—sea stores—not equipment.

Counsel for appellant have furnished us with an elaborate brief, wherein they have cited many decisions of the courts and regulations of the Treasury Department which, it is claimed, support their views. We deem it unnecessary to set out and discuss here all of the decisions and regulations referred to by counsel. It is sufficient to say that we have found no authority which warrants a holding that the term "equipments," as used in section 466, *supra*, was not intended by the Congress to include articles such as those here involved.

In the case of *United States* v. *Germania Importing Co.*, 8 Ct. Cust. Appls. 128, T. D. 37267, this court held that linoleum was free of duty as "outfit and equipment," under paragraph J, subsection 5 of section IV of the Tariff Act of 1913.

In the case of *Southwestern Shipbuilding Co.* v. *United States*, 13 Ct. Cust. Appls. 74, T. D. 40934, this court held that a variety of

articles, including "white blankets," "mattresses," "mattress covers," "table cloths," "laundry books," "cash receipt books," "letter files," "serviettes," "large linen envelopes," "ordinary envelopes," "ink bottles," "linen statements," "seaman's wage books," "coat hooks," and "feather dusters," were free of duty under paragraph J, subsection 5 of section IV of the Tariff Act of 1913 as "outfit and equipment" for vessels.  In so holding, the court, among other things, said:

Paragraph J, subsection 5, of Section IV, contemplates the *construction of the vessel as one thing, the building of its machinery as another, and its outfit and equipment as something else.*  [Italics not quoted.]  Necessarily, therefore, the materials which go into the construction of the vessel, the materials which are necessary for the building of its machinery, and the *articles* necessary for its outfit and equipment must be regarded as separate and distinct tariff entities.  *Toledo Ship Building Co.* v. *United States*, 8 Ct. Cust. Appls. 342, at pp. 343, 344, T. D. 37609.

The court there quoted from a report of the Naval Board of Construction defining the word "equipment," which report was *submitted upon request of the Treasury Department* immediately after the enactment of "section 8 of the act of October 1, 1890," from regulations of the Treasury Department enacted in 1908 and 1912, and the following from regulations of the Treasury Department enacted in 1913, T. D. 34150, which regulation was promulgated in accordance with the provisions of paragraph J, subsection 5, of section IV of the Tariff Act of 1913:

The term "outfit and equipment" is defined as including portable articles necessary or appropriate for the navigation, operation, or maintenance of a vessel, but not permanently incorporated in or permanently attached to its hull or propelling machinery, and not constituting consumable supplies.  The term includes, therefore, anchors, chains, cables, tackle, boats, repair parts, life-saving apparatus, nautical instruments, signal lights, lamps, *furniture, carpets, table linen, tableware, bedding, arms,* and munitions.  [Italics not quoted.]

and said:

As ordinarily understood, the term "outfit and equipment" considered together, includes everthing requisite to properly perform a service or to properly accomplish some definite object or purpose.  For "outfit" see Standard Dictionary.  For "equipment" see Standard Dictionary and *Rubey* v. *Coal & Mining Co.*, 21 Mo. Appls. 159, 169; *People* v. *St. Louis, Alton & Terre Haute Railroad Co.*, 176 Ill. 512, 522; *National Bank* v. *G. C. & S. F. Ry. Co.*, 95 Tex. 176, 183; *Oppenheimer* v. *Greencastle School Tp.*, 164 Ind. 99, 103; *United States Rubber Co.* v. *American Bond Co.*, 86 Wash. 180, 182.  Taking into account the definition given by the Naval Board and the Treasury Department of "equipment," the several definitions given by the Treasury Department of "outfit and equipment," and the ordinary meaning of that term, we are satisfied that portable articles and things necessary or appropriate for the protection or befitting comfort of those on board, or for the proper navigation or safety of a vessel, and not sea stores or a part of the hull or propelling machinery, come within the designation "outfit and equipment."  Furniture and furnishings necessary or suitable to make the vessel habitable and reasonably comfortable for those on board, considering the service in which the vessel is engaged or is to be engaged, things necessary to

keep the vessel in order and repair and to safeguard as far as possible crew and passengers from the perils of the sea are therefore free of duty under the provisions of paragraph J, subsection 5. Sea stores—that is to say, a reasonable quantity of provisions and supplies for the consumption, sustenance, and medical needs of crew and passengers during the voyage—are excluded from that paragraph for the reason that the distinction between sea stores and ship's stores or outfit and equipment has been for a long time judicially and legislatively firmly established. See sec. 22 of the act of August 4, 1790, 1 Stat. 161; sec. 17, act of March 3, 1897; protest of *Cunard Steamship Co.*, T. D. 21324; protest of *Ali*, T. D. 22433; *United States* v. *One Hempen Cable*, 27 Fed. Cas. 264, 265; *United States* v. *24 Coils of Cordage*, 28 Fed. Cas. 276–278; *United States* v. *23 Coils of Cordage*, 28 Fed. Cas. 290–292.

The terms "outfit," "equipment," and "equipage" are defined in Webster's New International Dictionary as follows:

outfit, *n*. 1. A fitting out, or equipment, as of a ship for a voyage   *   *   *.
2. The articles forming an equipment, as for a journey or an expedition   *   *   *.
outfit, *v. t. & i.* To furnish with an outfit; to fit out.
equipment, *n*. 1. Act of equipping, or state of being equipped, as for a voyage or expedition.   *   *   *
2. Whatever is used in equipping; necessaries or furnishings, as for an expedition or voyage; the articles comprised in an outfit; equipage   *   *   *.
equipage, *n*.   *   *   *   2. Furniture or outfit; esp., the furniture and supplies of a vessel, fitting her for a voyage or for war, or the furniture and necessaries of an army, a body of troops, or a single soldier, including whatever is necessary for efficient service; equipments; accouterments; habiliments; attire   *   *   *.
3. A set or collection of small articles for table service, for personal use, as in dressing, or the like; as, a tea *equipage*   *   *   *.

It is apparent from those definitions that the common meaning of the terms "outfit" and "equipment" are practically synonymous.

In the case of *United States* v. *Richard & Co.*, 8 Ct. Cust. Appls. 231, T. D. 37496, this court, in construing the following provisions of section 5 of the Panama Canal Act of August 24, 1912 (37 Stats., 562): "That all materials of foreign production which may be necessary for the construction or repair of vessels built in the United States and all such materials necessary for the building or repair of their machinery and all articles necessary for their *outfit and equipment* may be imported into the United States free of duty under such regulations as the Secretary of the Treasury may prescribe," [italics not quoted] held that the terms "outfit" and "equipment" were practically synonymous.

Generally the "term 'equipment' includes the necessary adjuncts of a service and imports the outfit needed or required to accomplish a special object or purpose." See *Cruger's (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 516, 518, T. D. 40730, and cases therein cited.

No claim is made here by counsel for appellant that the "term outfit and equipment," considered by this court in the case of *Southwestern Shipbuilding Co.* v. *United States, supra,* differs in meaning from the term "equipment," as used in section 466, *supra*. In fact

the only comment made by counsel for appellant on our decision in that case is that, although the court there held that a number of articles designed and used for the comfort and convenience of the passengers or the crew on board the ship fell within the meaning of the "term outfit and equipment," none of the articles there involved "were crockery or similar articles of tableware."

It is true, as stated by counsel for appellant, that crockery, such as plates, cups, and saucers, was not involved in that case. However, "table cloths," "serviettes," "pillow slips," "bolster covers," "mattresses," "mattress covers," and other articles used solely for the comfort and convenience of either the passengers or the crew on board the vessel were there held by the court to come within the "term outfit and equipment," as used in paragraph J, subsection 5, of section IV of the Tariff Act of 1913.

It is true, as argued by counsel for appellant, that "sea stores," as distinguished from "ship's stores" or "ship's equipment," are "consumable supplies." However, we think it is clear, as is plainly stated in our decision in the *Southwestern Shipbuilding Co.* case, *supra,* that "consumable supplies" or "sea stores" are "supplies for the consumption, sustenance, and medical needs of the crew and passengers during the voyage."

We are of opinion that the "crockery" here involved is within the meaning of the term "equipment," as used in section 466, *supra,* and that, under the circumstances of this case, it and the cost of labor and materials for painting portions of the vessel were properly held by the trial court to be subject to duty under the provisions of that section.

For the reasons stated, the judgment of the United States Customs Court is *affirmed*.