## Case No. 14,776.

### UNITED STATES' v. CHAIN CABLE.

[2 Sumn. 362.] [1]

Circuit Court. D. Massachusetts.　May Term, 1836.

FORFEITURE—LANDING WITHOUT PERMIT—SHIP'S CABLE.

Appurtenances or equipments of a ship, as a chain cable, or other articles, purchased bonâ fide for the use of the ship, are not "goods, wares, or merchandise," within the meaning of the revenue act of 1799, c. 128, § 50 [1 Story, Laws, 617; 1 Stat. 665. c. 22], which require a permit before they are landed.

[Cited in The Gertrude, Case No. 5,370; Weld v. Maxwell. Id. 17,374. Followed in U. S. v. Fry. 48 Fed. 714; The Conqueror, 49 Fed. 105.]

[In error to the district court of the United States for the district of Massachusetts.]

Information of forfeiture and seizure on land of one chain cable, for having been unladen and delivered from the ship Marathon, at the port of Boston, without a permit, against the collection act of 1799, c. 128, § 50. The cause was tried in the district court, at September term, 1835, upon the general issue, by a jury, and a verdict was found for the defendant. [Case unreported.] At the trial a bill of exceptions was filed by the district attorney, the substance of which was as follows: It was proved, that the cable in question was purchased at Liverpool by the master of the ship Marathon, during the last season, to supply the place of a steam hempen cable, which had become unseaworthy before the arrival of the ship at Liverpool, that the purchase was made bona fide, with the intention of using said cable for that ship, and not to sell as merchandise. That the cable was stowed in the usual place, without any concealment, and on the arrival in Boston, the ship was secured by the said cable to the wharf. A few days after the arrival of the Marathon, the same claimant, William Eager, had another ship about to be launched at Medford, and a list of articles was furnished by the ship's carpenter to be used in the launching and bringing said vessel to Boston, among which were a chain cable, sails, blocks, &c. &c. The mate of the Marathon, who then had charge of her, agreed, with the knowledge and concurrence of said Eager, to loan from the Marathon, said chain cable, sails, blocks, &c. to be used for the purpose aforesaid, but afterward to be returned to the ship as soon as the launching was over; and he, the mate, accordingly caused the said chain cable to be landed, to be taken to Medford by the wagoner, as also the other articles referred to from the ship. The next day, or the day after, the teamster took the said sails and blocks to Medford on one team, he being unable to carry the chain cable on the same load, and, on Saturday following, about noon, loaded the chain cable into his wagon, carried it out to Medford;

and while he was landing it at Medford, and before it was entirely out of his wagon, the said chain cable was seized by the custom house officers, and brought back to Boston. The said chain cable was soon after bonded, and put on board the Marathon. And the attorney for the United States requested the honorable judge to instruct the jury, that the cable could not lawfully be loaned or used for the purpose aforesaid, and that the collector of said port had authority to make the seizure. But the judge refused so to instruct the jury. On the contrary thereof, the jury were instructed, if they believed the purchase of said cable was bona fide, and necessary, and proper, the mere casual loan of it, to be used for the purpose before stated, would not subject it to be seized, unless they believed the proposed use was colorable merely. He further instructed the. jury, that although the cable was to be considered a part of the ship, yet if it was separated from it with an intention of selling or using it for another purpose, and not restoring it to the ship, that might be an unlawful use, which might subject it to seizure. But he left it for the consideration of the jury, whether, at the time and place when the cable was landed, or when the seizure was made, they could infer that there was any such intention of diverting, permanently, the use of the cable, and separating it from the ship Marathon. The said attorney further requested his honor, the judge, to instruct the jury, that if it were lawful for the claimant to loan or use said cable, for the purpose aforesaid, it could not be legally landed for that purpose, without a permit from the proper officers of the port aforesaid. But the said judge refused so to instruct the jury: On the contrary, the jury were instructed, that the claimant had the right to make a temporary loan of the cable, for the purpose aforesaid, without any permit, and that the mere casual temporary loan of the cable for any such purpose as the one supposed, no more required a permit, than to carry a sail to a sailmaker to be mended, or a chain cable to the smith for the same purpose, or any other part of the ship's tackle or apparel, which required repairs. But it was for the jury to consider, whether the loan of the cable for the purpose aforesaid, was, or was not, colorable upon the evidence in the case.

Judgment being rendered according to the verdict, the present writ of error was brought to the circuit court.

Mr. Mills, Dist. Atty.

J. P. Cooke, for claimant.

STORY, Circuit Justice. In my judgment the whole point in this cause resolves itself into this; whether the chain cable in controversy was, at the time of its arrival and importation into the United States, bona fide, a part of the equipments and appurtenances of the ship Marathon. If it was, then it is clear

---

[1] [Reported by Charles Sumner, Esq.]

to me, that no forfeiture is incurred. If it was not, then the case must be treated as an attempted evasion of the revenue collection act of 1799, c. 128, and the forfeiture consequently attaches. It appears from the evidence, that the chain cable was purchased at Liverpool, in England, to supply the place of a steam hempen cable of the ship. which had become unseaworthy; and the purchase was made, bona fide, for the use of the ship, and not to sell as merchandise; and it was used for the ship on her arrival at the home port. Now, the question of bona fides was directly put by the learned judge of the district court to the jury, and they have affirmed it by their verdict. The only ground, then, open to controversy, is, whether the directions given by the court, and the refusal of the instructions prayed by the district attorney at the trial, were correct and justifiable in point of law. I think they were correct and justifiable. If the chain cable was bona fide purchased, and bona fide an appurtenance of the ship, at the time of the arrival and importation thereof, it is clear, that the owner might lend it and loan it, as he should please, without any permit. The provisions of the revenue laws do not require any permit to be given before the landing of any of the ship's appurtenances or equipments. If a new sail had been necessarily purchased abroad for the ship's use, to supply an old sail, worn out, or lost on the voyage, it will scarcely be pretended, that it required a permit in order to be landed, or that though composed of dutiable articles, before it was made up, the sail would, upon the ship's coming to the home port, be liable to duties.

It is possible, that evasions of the revenue laws may sometimes occur, under color of procuring new sails, or rigging, or equipments of our ships in foreign ports; and thus, the party may escape from the payment of the proper duties on the articles thus imported, and introduced into the country. But, the defect, if any, is to be cured by legislation, and not by the courts of law. Until congress shall declare, that the new rigging or equipments of a ship, procured abroad, are dutiable, or not to be landed without a permit, it seems to be difficult to conceive, how courts of justice can treat them as "goods, wares, or merchandise," within the meaning of the general revenue laws. The "goods, wares, and merchandises," within the provision of the 50th section of the revenue collection act of 1799, c. 128, are such only as are designed for sale or to be applied to some use or object, distinct from their bona fide appropriation to the use of the ship; in which they are imported. Upon any other construction, not only every sail, rope, yard, or other appendage of the ship, purchased for the immediate use of the ship, and from an obvious necessity, in a foreign port, would be liable to the ordinary duty acts; but even the common tables, chairs, wares, and provisions, for the daily accommodation of the ship and her crew, would fall under the like predicament, and could not be landed without a permit. It is impossible, in my judgment, to contend, successfully, for such a construction of our existing revenue laws. And yet I know not, how, upon principle, to distinguish between the case put, and the case now at the bar. Upon the whole, my opinion is, that the judgment of the district court ought to be, and hereby is affirmed.