SMITH and others *v.* SCHELL and others.

*(Circuit Court, S. D. New York.   April 9 and 12, 1886.)*

1. CUSTOMS DUTIES—PROTEST—SUFFICIENCY.
    A protest made in the case of merchandise not enumerated *eo nomine* in the tariff act in force at the time of its importation, and stating only that the same is claimed to be dutiable at a rate of duty which is imposed by such act upon upwards of 250 articles specially enumerated, and also upon all articles "not enumerated" therein, is insufficient, under the protest act of February 26, 1845, (5 St. at Large, 727,) and no recovery can be had thereunder.
2. SAME—CIRCULAR RATE.
    A protest made in the case of this merchandise, stating the rate of duty only that it is claimed should be imposed thereon, but especially referring for the grounds of the claim to a treasury circular, in which it was held by the secretary of the treasury that other merchandise therein mentioned was dutiable at that rate as being a manufacture of a certain material enumerated in the tariff act as such manufacture, is to be taken together with such circular as constituting the claimants' entire protest, and is, with such circular, sufficient, under the protest act of 1845, to entitle them to recover, if they prove that the merchandise covered by the protest is such manufacture.
2. SAME—DISTINCTION MADE BY COURT.
    But if this merchandise is shown to be a manufacture of a material bearing another name than the material of which the manufacture named in the protest is composed, and the tariff act makes a clear and positive distinction between these materials by imposing thereon *eo nomine* different rates of duty, the court, in considering the tariff act, will make the same distinction, although the name of the second material is the name of the genus, and the name of the first is the name of a species thereof; and the claimants are not entitled to recover.

During August and September, 1857, one Henry Hooman imported from Dundee and Glasgow, in Scotland, into the port of New York, certain carpeting, and entered the same for warehouse as

"hemp carpeting." Subsequently, and while in warehouse, Hooman transferred this carpeting to the firm of Haggerty & Co., the surviving partner of which is the plaintiff's testator. The defendant's testator, the late Augustus Schell, classified this carpeting as "jute carpeting," dutiable at 24 per centum *ad valorem*, under the provision for "carpets, carpeting, hearth-rugs, bedsides, and other portions of carpeting, being either Aubusson, Brussels, ingrain, Saxony, Turkey, Venetian, Wilton, or any other similar fabric," contained in Schedule C of the act of July 30, 1846, (9 St. at Large, 42,) as amended by the act of March 3, 1857, (11 St. at Large, 192.)

Pursuant to the act of February 26, 1845, (5 St. at Large, 727,) Hooman, at the time he entered the carpeting for warehouse, made protests as follows:

"I hereby protest against the payment of twenty-four per cent. duty charged on the annexed entry of hemp carpeting, claiming that under the tariff act of March 3, 1857, the same are only subject and liable to the duty of fifteen per cent. I claim to have the difference refunded, only paying the amount to obtain possession of the goods."

Subsequently, and on March 17, 1858, Haggerty & Co., pursuant to the same act, made protests as follows:

"We hereby protest against the payment of twenty-four per cent. duty charged on the annexed entry of hemp carpeting, claiming that especially under the recent decision of the honorable secretary of the treasury, and by the circular issued by him relating to the duty on hemp carpeting, the same are only subject and liable to pay a duty of 15 per cent. *ad valorem.* We make this additional protest in view of these facts, and claim to have the difference refunded, only paying the amount to obtain possession of the goods."

The decision and circular of the secretary referred to by Haggarty & Co. in this protest read as follows:

"TREASURY DEPARTMENT, March 1, 1858.

"SIR: Messrs. Wyman and Acklay have appealed to this department from the decision of the collector at Boston, assessing duty on an article invoiced as ' Dutch carpeting ' at the rate of 24 per cent., under the classification in Schedule C of the tariff of 1857, of ' carpets, carpeting, hearth-rugs, bedsides, and other portions of carpeting, being either Aubusson, Brussels, ingrain, Saxony, Turkey, Venetian, Wilton, or any other similar fabric.' The appellants contend that the article in question, being manufactured of hemp, should be charged with duty at the rate of 15 per cent., under the classification in Schedule E of the tariff of 1857, of ' manufactures of hemp not otherwise provided for.' ' Dutch carpeting ' is a fabric differing from some one or more of the descriptions of carpets specially named in Schedule C only in the material of which it is composed, the former being of hemp and the latter of wool; and the question is presented whether carpeting composed of hemp can be regarded as a fabric ' similar ' to the enumerated varieties, within the meaning of the law. The department is of opinion that that term has reference as well to the material of which the fabric is composed, as to the mode of manufacture or the use for which it is designed, and that the article in question should be charged with duty at the rate of 15 per cent., under the

classification of Schedule E of 'manufactures of hemp not otherwise provided for.' The decision of the collector is therefore overruled.

"Very respectfully,

"HOWELL COBB, Secretary of the Treasury.

"*A. W. Austin, Esq., Collector, Boston, Mass.*"

Thereafter Haggerty & Co. withdrew the carpeting in suit from warehouse for consumption, paid duty thereon at the rate of 24 per centum *ad valorem*, and brought this suit to recover the excess of duties exacted above 15 per centum *ad valorem*.

In Schedule E of the tariff act of 1846, as amended by that of 1857, are upwards of 250 specially enumerated articles, each dutiable at 15 per centum *ad valorem*. Section 1 of the act of 1857 imposed a duty of 15 per centum *ad valorem* upon all articles "not enumerated" in either of these acts. Schedule D of the act of 1846, as amended, imposed a duty of 19 per centum *ad valorem* on "jute, sisal grass, coir, and other vegetable substances, unmanufactured, not otherwise provided for," and on "matting, China, and other floor-matting, and mats made of flags, *jute*, or grass." Schedule C imposed a duty of 24 per centum *ad valorem* on "hemp unmanufactured;" and, as already stated, Schedule E a duty of 15 per centum on "*manufactures of hemp* not otherwise provided for," and Schedule C a duty of 24 per centum on "carpets, carpeting," etc.; but in neither of these acts is "*hemp carpeting*" or "*jute carpeting*" provided for *eo nomine*. (Hemp and jute are also treated as separate articles in the following named tariff acts: Section 3 of the act of August 30, 1842; sections 14 and 15 of the act of March 2, 1861; sections 10 and 11 of the act of July 14, 1862; section 7 of the act of June 30, 1864; section 21 of the act of July 14, 1870; Schedule C, section 2504, Rev. St.; Schedule J of the act of March 3, 1883.)

Upon the trial, when the plaintiffs offered in evidence the protests made by Hooman, the defendants objected to their admission on the ground that they did not comply with the requirement of the protest act of 1845 for the following reasons: (1) These protests do not point out (and did not point out to the collector) the precise error of fact or law which it is now claimed rendered his exaction of duty unauthorized. (2) They do not refer in terms to any article or the name of any article, specially or generally, in either of the tariff acts of 1846 *or* 1857, or in any way to the provision for non-enumerated articles contained in the latter act; "hemp carpeting" not being mentioned *eo nomine* in either of these acts. (3) The only particular of fact or law pointed out in them is that under the tariff act in force the carpeting in suit is "only subject and liable to the duty of fifteen per cent." Schedule E of the act of 1846, as amended by that of 1857, contains upwards of 250 articles, and imposed a duty of 15 per centum *ad valorem* on each of them. Section 1 of the act of 1857 also imposed a duty of 15 per centum *ad valorem* on articles "not enumerated" in either act. These protests do not point out or

specify whether it is claimed that the carpeting in question was dutiable under Schedule E of the first act, or section 1 of the second act. (4) The protest act of 1845 did not require a collector to search through a list of 250 articles or more to ascertain whether these protests could possibly be made to apply under Schedule E; and, if not, then to search through all the other parts of the tariff acts of 1846 and 1857 to ascertain whether they could possibly be made to apply under the provision for non-enumerated articles of the latter act. The protest act of 1845 made it the duty of the claimant to set forth distinctly and specifically the grounds of his objection to the collector's classification of the merchandise in question, and his exaction of duty thereon.

*Stephen A. Walker*, U. S. Atty., and *Thomas Greenwood*, Ass't U. S. Atty., for defendants, cited *Davies* v. *Arthur*, 13 Blatchf. 34; S. C. 96 U. S. 148, and cases therein cited.

*A. W. Griswold*, for plaintiff, cited *Arthur* v. *Morgan*, 112 U. S. 495; S. C. 5 Sup. Ct. Rep. 241; *Steegman* v. *Maxwell*, 3 Blatchf. 365; *Stone* v. *Redfield*, decided November 25, 1861, by NELSON, J.; *Vaccori* v. *Maxwell*, 3 Blatchf. 368.

COXE, J., (*orally*.) There is no escape from the conclusion that this protest is insufficient. The statute provides that a person who feels himself aggrieved must, by his protest, point out clearly and specifically the, grounds of his objection. The importer of the carpeting in suit protests against paying the duties charged by the collector, insisting that under the tariff act of 1857 his importations are only subject to a duty of 15 per cent. *ad valorem*. This is simply referring the collector to the tariff act of 1857. The protest does not point out to the section or the clause upon which the importer relies. There are, in that act, two sections under which the importations in question might be assessed at the rate of 15 per cent., and the plaintiffs are, even now, unprepared to say upon which they will finally rest their case. The collector is referred to neither. The protest leaves everything to speculation and conjecture. The collector is informed that he has made a mistake, but is left without the slightest information by which to correct it. The law requires more than this of the importer. The defendants' objection is therefore sustained, and the protests made by Hooman are excluded.

The defendants' counsel made the same objection to the admission in evidence of the protests made by Haggerty & Co. as was taken to the Hooman protests; but the court held that the secretary's circular of March 1, 1858, to which these protests refer, must be taken as a part of them, and that consequently it is evident that the grounds of objection taken to the payment of duty at 24 per centum *ad valorem* by Haggerty & Co. in their protests are that the carpeting in suit is dutiable at 15 per centum *ad valorem*, under the provision for

"manufactures of hemp" contained in Schedule E of the act of 1846 as amended. The court thereupon overruled defendants' objection, and admitted in evidence Haggerty & Co.'s protests.

The plaintiffs then produced two witnesses to show that "hemp carpeting," or "jute carpeting," as it was sometimes called, was made in 1857, and as far back as 1846, of one article commercially known as "jute," and never of anything else; that jute is the fibre of a plant called "jute," and hemp the fibre of a plant called "hemp;" that in both cases this fibre is the inner bark of the plant; that there is as much difference, possibly more difference, between jute and some species of hemp than there is between one species of hemp and another; that jute is less woody than hemp, and softer, if by "woody," "stiffness" is meant; that jute is a product of India, and hemp of Russia, Sweden and Norway, Italy, India, and other countries; that jute is cheaper than hemp, and in fact the cheapest article grown or produced that could be put into a carpet or carpeting; that originally hemp was used in Dundee, Scotland, and in England; that subsequently jute was introduced, and was and is now used as a substitute for it; that jute and hemp are sometimes mixed in manufacturing; that "hemp carpeting" is a species of carpet or carpeting which, like ordinary carpets or carpeting, is spread on the entire floor, or in strips, as the purchaser may fancy. One of these witnesses testified that jute is a species of hemp. But it did not appear, however, from the testimony of either of these witnesses, that jute was ever commercially known in 1846 or in 1857, or at any time between these years, as a species of hemp. Plaintiff also read the definition of "hemp" as given at page 64 of volume 11 of the Encyclopædia Britannica and in Ures' Dictionary of Arts, Manufactures, etc.; and section 13 of the tariff act of 1861, and section 9 of the act of 1862, as to hemp and jute carpeting.

The plaintiffs having rested, the defendants' counsel moved the court to direct a verdict in their favor on the ground that plaintiffs had not proven facts sufficient to constitute a cause of action.

*Defendants' Counsel.* The merchandise in suit has not been proven to be a manufacture of hemp, and upon plaintiffs' theory of the case, before they are entitled to recover, such proof must be made. Under Schedule C of the tariff act of 1846, as amended by that of 1857, "hemp unmanufactured" was subject to a duty of 24 per centum *ad valorem;* under Schedule D "jute, sisal grass, coir, and other egetable substances, unmanufactured, not otherwise provided for," and "matting, China and other floor-matting, and mats made of flags, jute, or grass, were subject to a duty of 19 per centum *ad valorem;* and, under Schedule E, "manufactures of hemp not otherwise provided for," to a duty of 15 per centum *ad valorem.* It thus appears that congress has in these acts made a clear and positive distinction between jute and hemp. As congress has made this distinction, this court is bound, in considering these acts, to make the same distinc-

tion. The undisputed testimony in this case shows that at and prior to the dates of the passage of these acts "hemp carpeting" was made of jute. Within the purview of these acts, it is not a manufacture of hemp. But it matters not whether hemp carpeting was made of hemp or of jute; the merchandise in suit was carpeting, and was therefore properly classified for duty under the provision for carpeting contained in Schedule C. If further reason for this classification be needed, it is found in the fact that no evidence has been produced by the plaintiffs to show of what material or materials this merchandise was composed.

*Plaintiffs' Counsel.* No inference must be drawn to the damage or detriment of the plaintiffs by reason of the difference between unmanufactured hemp and unmanufactured jute; because, at the very time of the passage of the act of 1857, congress had made several appropriations for the encouragement of the manufactures of what is known as "Russian hemp," or hemp proper, and contracts were made by direction of congress for the purchase of American hemp in place of this foreign hemp, for the uses then made of it. The whole question in this case is, was this hemp which was called by the importer "hemp carpeting," and which was returned by the appraiser as jute carpeting, manufactured hemp? And that all turns upon the question whether or not jute is a species of hemp. If jute is a species of hemp, then the plaintiffs' carpeting is a manufacture of hemp, and he is entitled to a verdict. That is all there is to it. The plaintiffs insist that there has been evidence enough offered in this case to go to the jury upon the question whether or not jute is a species of hemp. He has the testimony of one of his witnesses upon that question, and he has the authorities in two books that jute is a species of hemp.

THE COURT, (*orally.*) I think the counsel for the defendants states the controversy in this case perfectly. The burden is upon the plaintiffs to satisfy the jury that these importations are manufactures of hemp. Unless the plaintiffs succeed in doing so, they are not entitled to recover. Instead of proving that their importations are manufactures of hemp, they have proved beyond any question that they are manufactures of jute. They have, it is true, supplemented this evidence by the opinions of learned gentlemen, taken from various periodicals, that hemp and jute are substantially the same thing, and it is insisted that the proof is sufficient to uphold a finding by the jury to this effect. But the short answer, in my judgment, is that we are construing the tariff acts of 1846 and 1857, where the law-makers have drawn a clear distinction between the two materials. So I do not see how I can leave it to the jury as a question of fact to say whether the two are the same, when congress has said that they are different. Congress, throughout the law, has recognized the distinction between "jute" and "hemp." The two words are repeatedly

used, and duties are imposed upon manufactures of each respectively.

As there is no question of fact, gentlemen, you will render a verdict in favor of the defendants.

Such verdict was thereupon rendered.