UNITED STATES *v.* RICHARD & Co. (No. 1797).[1]

1. CONSTRUCTION, SECTION 5, PANAMA CANAL ACT—"OUTFIT AND EQUIPMENT."
   The word "outfit" and the word "equipment," section 5, Panama Canal act of August 24, 1912 (37 Stats., 562), are practically synonymous.

2. SHIP'S EQUIPMENT—SPARE ENGINE PARTS.
   Although engines for operating the auxiliary lighting plants of ships built in this country must be regarded as parts of the vessels, and not as outfit or equipment for them, still spare or repair smaller wearing parts for such engines, such parts being carried in duplicate by such vessels, are admissible free of duty as "outfit and equipment" of vessels built in the United States, under section 5, Panama Canal act of August 24, 1912 (37 Stats., 562).

United States Court of Customs Appeals, December 12, 1917.

APPEAL from Board of United States General Appraisers, Abstract 40448.

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*John J. Mulvaney,* special attorney, of counsel), for the United States.

*Curie, Smith & Maxwell* (*Thomas M. Lane* of counsel) for appellees.

---

[1] T. D. 37496 (34 Treas. Dec., 53).

[Oral argument Oct. 19, 1917, by Mr. Mulvaney and Mr. Lane.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The importation here consists of what is known as spare or repair parts, in duplicate, of two 120-horsepower Diesel engines, one installed on the *Moreno* and the other on the *Rivadavia*, battleships built in this country for the Argentine Republic. These engines were built abroad and imported and entered separately from the parts in question. Each is designed and used to operate a dynamo to supply the vessel with electric light and power. They can not be used for propelling the ship, but the switchboard connected with each is so arranged that the power thereof can be used for operating the blower employed to produce steam in the boilers which furnish the ship's propelling power. Their principal function, however, is to furnish electric light for the ship whenever its main power plant is not in operation, which ordinarily happens when in harbor, but may of course occur on the high seas.

These spare parts were imported in June, 1913, and it is agreed that whether or not they are dutiable depends upon the construction to be given to section 5 of the Panama Canal act of August 24, 1912 (37 Stats., 562), the material part of which we quote:

That all materials of foreign production which may be necessary for the construction or repair of vessels built in the United States and all such materials necessary for the building or repair of their machinery and all articles necessary for their outfit and equipment may be imported into the United States free of duty under such regulations as the Secretary of the Treasury may prescribe.

The collector assessed the merchandise under paragraph 199 of the tariff act of 1909. The board sustained the protest claiming free entry under the statute above quoted, and the Government brings the case here on appeal.

It is agreed that to prevail here the importers must establish that the merchandise is materials necessary for (a) the repair of vessels, (b) the repair of their machinery, or (c) is articles necessary for their outfit and equipment.

Each of these points has been fully briefed and discussed by counsel. There is no question that these spare parts are duplicates of the smaller wearing parts of the respective engines and not of their larger and more substantial parts. Such smaller parts are, however, indispensable to the operation of the engines. The contract with the Argentine Government required these duplicate parts to be furnished. The Government of the United States requires duplicate parts of certain mechanism to be furnished on vessels built for it. No question is made that modern battleships are electrically lighted. The evidence is that this is equally true of commercial ships of

importance. These duplicate spare parts were put aboard the war vessels prior to their delivery to the Argentine Republic.

We consider first the question of whether these duplicate parts are "outfit and equipment" for vessels within the meaning of the statute and agree with the Government that "outfit" and "equipment" are practically synonymous.

It was in substance said by this court in Otte *v.* United States (7 Ct. Cust. Appls., 166, T. D. 36489), referring to subsection 5 of paragraph J of section 4 of the tariff act of 1913, the immediate successor to, and, so far as the issue here is concerned, not different in legal effect from, the statute now before us, that while Congress had manifested its intention to distinguish between the equipment for a vessel and the vessel itself, nevertheless the true line of such distinction was somewhat difficult of ascertainment.

In United States *v.* Outerbridge & Co. (7 Ct. Cust. Appls., 223, T. D. 36511) it was pointed out that the said statute was designed to encourage shipbuilding in the United States. It was held in that case, however, that the statute must not be so construed as to make this country a place for the assembling only of parts of a ship or parts of its machinery manufactured abroad and that a complete triple-expansion marine engine imported in a knocked-down condition was not within the free entry provision of the statute.

That vessels have from the foundation of our Government been treated as sui generis and subject to an entirely different set of laws and regulations than those applied to imported articles as claimed by the Government, is not only conceded but established. We do not think, however, that such different treatment supports the further contention of the Government that Congress in the statute before us has used the term "outfit and equipment" in a sense that excludes the importations here therefrom; neither do we think that a review of the authorities cited by the Government justifies the conclusion that these words in the past have been by the courts or by administrative officials so construed or applied as to justify the Government's contention here that these spare parts may not be outfit or equipment of vessels within the meaning of section 5, first herein quoted.

It is unnecessary to enter upon an extended review of all the authorities cited by either party. As was pointed out in the case of Otte *v.* United States, supra, the Board of Naval Construction was at one time asked to define the word "equipment," and complying with the request it said in substance that equipment in a general sense might be defined as any portable thing that is used for or provided in preparing a vessel whose hull was already finished, for service; that the term "hull and fittings" was commonly used in contradistinction to "equipment"; that the "fittings of the hull" were understood to be any permanent thing attached to the hull which would

remain on board were the vessel to be laid up for a long period; and that "equipment" in relation to a ship includes furnishing the ship with tackle, apparel, and other things used in or about a ship for the purpose of fitting or adapting her for the sea or for naval service.

While there undoubtedly has been and is a distinction to be kept in mind between the hull of a vessel and its indispensable machinery, to the extent at least of saying that such machinery is not a part of its outfit or equipment, yet we find nothing in principle or authority that enables us to say that when the hull has been completed and the machinery installed therein, such entirety may not be regarded as a completed vessel, assuming always that the machinery is necessary to constitute it a finished ship ready and able to perform its functions in navigation.

Attorney General Wickersham, in volume 27 of the Opinions of the Attorneys General (p. 228), responding to an inquiry of the Secretary of the Treasury whether a steam evaporator and pump used in the construction of a dredge were entitled to a certain drawback, discussed at considerable length the question of equipment of vessels and cited the opinion of the Board of Naval Construction referred to in the Otte case, supra. In the course of his opinion, he used the following language:

> It appears, therefore, that those appliances which are permanently attached to the vessel, and which would remain on board were the vessel to be laid up for a long period, are parts of the vessel itself. And, inasmuch as the pump and evaporator in question are so attached to this vessel and are essential and permanent parts of it, they are not a part of the equipment, but are material used in the construction of the vessel within the meaning of the statute.
>
> The fact that they do not aid in keeping the vessel afloat or propelling it does not have a material bearing upon this question. * * * The vessel must be taken as a whole, with all the permanent attachments necessary or useful to accomplish the object for which it is designed.

We think that much of this statement is sound law and that although for certain purposes the hull and machinery are treated separately, yet when they are combined, they constitute the vessel; that each permanent machine necessary to enable the vessel to perform its proper function in navigation becomes a part thereof; and we treat the case before us upon the theory that these Diesel engines when installed on the respective warships to which they belonged were parts of the vessel.

The next step of the discussion involves the question as to whether the spare or repair parts of such engines are outfit and equipment within the meaning of the statute. It is contended by the Government that they are not such, and it is urged that because these engines were not themselves outfit and equipment, the spare parts could not fall within that term. We think there is much force in the importers' counter to this contention, "that there is no logical sequence between the premise and the conclusion." It is obvious

to us that there are many things not outfit or equipment in the statutory sense that may be separately imported and, because finished articles and within the principle of the Outerbridge case, supra, dutiable, yet when installed upon and for permanent use in the vessel they become a part thereof, although separately treated up to that time. The question must always be determined in view of the function of the vessel itself and the part which such articles play in enabling it to perform such function. When, however, machinery like these Diesel engines has been permanently installed upon a ship and thereby becomes a necessary part thereof, spare or repair parts therefor may be a part of the necessary "outfit and equipment" for the ship itself. Attorney General Taft in a somewhat exhaustive opinion (see 20 Opinions of the Attorneys General at page 194) considered the dutiability of certain main shafts brought to this country to replace those that were disabled or broken on other vessels. He advised the Treasury Department that under the circumstances they were chargeable with duty but in the discussion used this expression:

It might be conceded that if it were possible to carry two shafts on the vessel, the one to be used in case of accident as a substitute for the other, the unused shaft so carried would be part of the equipment of the vessel and exempt from duty, just as her boats or other detached parts of her equipment would be.

See the opinion of Solicitor General Richards, approved by Attorney General Griggs (vol. 22, Opinions of the Attorneys General, 360). See also United States *v.* Twenty-three Coils of Cordage (28 Fed. Cas., 290), affirmed in the same volume at page 276, and United States *v.* Chain Cable (25 Fed. Cas., 391).

This view is confirmed by the regulations of the Treasury Department applicable to the act of 1913 (see T. D. 34150), in which it is provided that the term "outfit and equipment" shall include—

Portable articles necessary or appropriate for the navigation, operation, or maintenance of a vessel, but not permanently incorporated in or permanently attached to its hull or propelling machinery, and not constituting consumable supplies.

Various articles are therein named, among which are included "repair parts."

We think, in view of the purpose to be accomplished by the Panama Canal act, it is wholly consistent therewith to permit duplicate or spare wearing parts of machinery which is a part of the vessel, to be regarded as necessary equipment for the vessel itself. Whatever may have been thought in earlier days upon this subject—and we are unable to find anything explicitly to the contrary of our conclusion—there can now be no question that the modern ship of war and probably of commerce, whether in harbor or at sea, must be furnished with adequate power and facilities for its lighting. The care and safety of the vessel and her crew, as well as the safety of other vessels so demands. When in harbor and while the motive power plant

is not in operation such lighting must be furnished by other means; in event of a breakdown of its propelling plant at sea, such auxiliary power is equally if not more important. These Diesel engines provide such power. The duplicate spare parts thereof were not designed to be and have not been used in the construction of any machinery, but are simply duplicates of the smaller wearing parts that at any time are liable to become worn out or to be lost or mislaid, in which case the lighting engines would be put out of commission until such parts were replaced. Whether in harbor or at sea, in times of peace or of war, the emergency requiring their immediate use may arise at any time and the demand that they be immediately available, imperative.

We hold that they were a necessary part of the outfit and equipment of the respective vessels on which they were placed and therefore entitled to free entry.

The Board of General Appraisers seems to have sustained the protest on the ground that the merchandise was for the repair of the vessels or their machinery and while we prefer to rest our conclusion upon the ground that it is the outfit or equipment of a vessel within the meaning of the statute, it follows nevertheless that the judgment sustaining the protest ought to be, and it is, *affirmed.*