UNITED STATES *v.* HARLAN & HOLLINGSWORTH CORPORATION (No. 1791).[1]

1. SHIP'S EQUIPMENT—SPARE PUMP PARTS.
   Spare or repair parts for pumps to be installed in American built vessels are admissible free of duty under subsection 5 of paragraph J, tariff act of 1913—United States v. Richard & Co. (8 Ct. Cust. Appls., 231 T. D. 37496).

2. PLEADING—PROTEST, SUFFICIENCY OF.
   A protest reciting as its basis a letter from the Assistant Secretary of the Treasury to the collector of customs directing that merchandise of the class of that in question here be admitted free of duty under the tariff act of 1913, is sufficient to claim under that act, notwithstanding that the protest also claims under the repealed section 5 of the Panama Canal act of August 24, 1912 (37 Stats., 562).

United States Court of Customs Appeals, December 12, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7971 (T. D. 36720).

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*John J. Mulvaney,* special attorney of counsel), for the United States.

*Curie, Smith & Maxwell* (*Thomas M. Lane,* of counsel), for appellees.

[Oral argument Oct. 19, 1917, by Mr. Mulvaney and Mr. Lane.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

Section 5 of the act of August 24, 1912, familiarly known as the Panama Canal act, provided as follows:

---

[1] T. D. 37497 (34 Treas. Dec., 58).

SEC. 5. * * * That all materials of foreign production which may be necessary for the construction or repair of vessels built in the United States and all such materials necessary for the building or repair of their machinery, and all articles necessary for their outfit and equipment may be imported into the United States free of duty under such regulations as the Secretary of the Treasury may prescribe: * * *.

The tariff act of October 3, 1913, by subsections 5 and 6 of paragraph J of section 4, amended said section 5 of the Panama Canal act by the following language:

J. Subsection 5. That all materials of foreign production which may be necessary for the construction of naval vessels or other vessels of the United States, vessels built in the United States for foreign account and ownership or for the purpose of being employed in the foreign or domestic trade, and all such materials necessary for the building of their machinery, and all articles nescesary for their outfit and equipment may be imported in bond under such regulations as the Secretary of the Treasury may prescribe; and upon proof that such materials have been used for such purposes, no duties shall be paid thereon.

J. Subsection 6. That all articles of foreign production needed for the repair of naval vessels of, or other vessels owned or used by, the United States and vessels now or hereafter registered under the laws of the United States may be withdrawn from bonded warehouses free of duty, under such regulations as the Secretary of the Treasury may prescribe.

For a considerable period of time after the enactment of the tariff act of October 3, 1913, there was serious doubt and difference of opinion in import customs circles whether or not in the particulars stated the tariff act of October 3, 1913, amounted to a repeal of the Panama Canal act or was only amendatory thereof, wherefore certain portions of said section 5 of the Panama Canal act, unnecessary of enumeration here, after the enactment of the said tariff act would be in full force and effect. Accordingly the recorded administrative and judicial interpretation of the two provisions witnesses not a little confusion, predicated on the difference in view whether or not the subsequent was a repeal or amendment of the former act.

After enactment of said act of 1913 certain duplex pumps and extra repair parts therefor were imported at the port of Wilmington, Del. The pumps were passed free of duty, the deputy collector in charge reporting that they "were returned as free under section 5, Panama Canal act, *or* subsection 5 of paragraph J of act of October 3, 1913." The extra parts were assessed for duty under paragraph 167 of the tariff act of 1913. Thereupon the importers protested in the following language:

WILMINGTON, DEL., *March 6, 1916.*

DEPUTY COLLECTOR OF CUSTOMS,
    *Post Office Building, Wilmington, Del.*

SIR: We hereby make formal protest against the liquidation of consumption entry No. 12–A (covering pumps and repair parts), dated July 27,. 1915, received by the steamship *Crown Point,* which arrived at Philadelphia on July 21, 1915, entered as manufactures of metal and rate 20 per cent, duty charged on spares being $65.80.

We also protest against our own execution of this entry, as we entered same in error, materials therein mentioned being free of duty under Panama Canal act, section 5— "repair parts to be used in the construction of vessels."

Our basis for protest is a letter of the Assistant Secretary of the Treasury, Mr. Andrew J. Peters, to the collector of customs at Philadelphia, dated September 8, 1915, as follows:

Pumping machinery constitutes a permanent attachment of a vessel, and parts for repairs of pumping machinery may be admitted free of duty under either subsection 5 or subsection 6 of paragraph J of section 4 of the tariff act of October 3, 1913, subject to compliance with the regulations thereunder in T. D. 34150.

Very truly, yours,

HARLAN & HOLLINGSWORTH CORPORATION,
S. K. SMITH,
*Vice President and Treasurer.*

The Board of General Appraisers sustained the protest, and the Government appeals to this court for a reversal of that decision.

The question of the dutiability of these repair parts was argued at the same term with this appeal in the case of United States *v.* Richard & Co. (8 Ct. Cust. Appls., 231; T. D. 37496), decided this day. The issues presented in this case are concededly controlled by the issues presented in that case as to the dutiability of these repair parts. That decision, therefore, rules this point herein.

The separate question here presented is the sufficiency of the protest. It is claimed by the Government that the tariff act of 1913 by said subsections 5 and 6 of paragraph J repealed section 5 of the Panama Canal act, and that, therefore, the reference in the protest to that act renders the protest insufficient. We are of the opinion that the board did not err in sustaining this protest.

Aside from the question of doubt as to which act was applicable, it will be noted that the protest is based upon a letter of the Assistant Secretary of the Treasury advising that repair parts of pumping machinery upon vessels were entitled to free entry under subsection 5 or subsection 6 of paragraph J, section 4 of the tariff act of 1913. While, therefore, the claim of the protest recited an act which was repealed it also made clear to the collector that the basis of the claim was under the provisions of the tariff act of 1913 and distinctly and specifically pointed out the provisions thereof.

Any other view than that this protest is sufficient would overrule a considerable authority. Smith *v.* Schell (27 Fed., 648), a decision by the United States Circuit Court for the Southern District of New York, is precisely in point. Therein the court held that a protest referring for the grounds of its claim to a circular by the Treasury Department was to be read together with the protest, and being thus made definite was therefore sufficient. A similar doctrine was announced by the United States Supreme Court in Schell's Executors *v.* Fauche (138 U. S., 562). The question concerned the sufficiency of an import customs protest. The question was whether or not two pieces of paper attached together with a wafer should be read as a whole. The court said:

Authorities are plentiful to the effect that papers attached together even by a pin are to be treated as a unit constituting one entire contract or memorandum. * * * If, however, the papers are not connected together in fact, they are not considered as connected in law unless, at least, the paper signed refers in some way to the other, which may then be construed as forming a part of it. Hinde *v.* White-house (7 East, 558); Kenworthy *v.* Schofield (2 B. & C., 945). The proper test is, whether a person reading these papers would be deceived or misled as to the actual intention of the writer. We think that there can be but one answer to this, and we hold the objection was not well taken.

On the proposition of an erroneous reference to a statute there is also respectable authority. In Boussod Valadon Co. *v.* United States (66 Fed., 718) that point was held decisive of the case. Therein the protest referred to an erroneous provision of the law. Judge Coxe said:

The reference to a statute not in existence at the time was surplusage and did not relieve the collector from proceeding under existing laws. The protest was clear and explicit in pointing out the facts and the reason why the importer insisted that the painting should enter free of duty.

So in Shaw *v.* United States (122 Fed., 443), a decision by the Circuit Court of Appeals for the Second Circuit. Therein the claim was made for the free entry of tapioca flour under paragraph 646 of the tariff act of August 27, 1894. An identical provision was paragraph 677 of the tariff act of 1897, which later act repealed the former. The court said:

The error of the importer in giving a wrong citation required of the collector an exercise of the reasoning powers, but to a limited extent only. Was he justified in refusing to examine the only act which could by any possibility apply to the case before him?

The collector was, in effect, informed that the importation was claimed to be free as tapioca, and we are inclined to think that it was incumbent upon him to refer to the free list of the act under which duty had been levied. If he had done this he would have found that tapioca was free.

The case presented by this record is well within the reasoning as well as the letter of the authorities cited. Obviously, from the report of the deputy collector he was not misled as to the true claim of the importers, and there was sufficient in the protest to call his attention to the existing act under which claim was made and the precise grounds of that claim.

We think the protest sufficient.

*Affirmed.*