334

UNITED STATES *v.* STANDARD OIL CO. OF CALIFORNIA (NO. 4275)[1]

United States Court of Customs and Patent Appeals, March 4, 1940

*Webster J. Oliver*, Assistant Attorney General (*Samuel D. Spector*, special attorney, of counsel), for the United States.

*Lawrence A. Harper* (*Abraham Gottfried* of counsel) for appellee.

[Oral argument February 5, 1940, by Mr. Spector and Mr. Gottfried]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

The question involved in this appeal is the proper classification of parts of Diesel engines and assessment of duty thereon. The merchandise was purchased by appellee in Germany for the purpose of making repairs upon the Diesel engines installed in the motor vessel *California Standard* owned by appellee. The parts were transported to the United States in the hold of said vessel as ordinary freight. The cases containing the parts were landed on the dock at the port of Los Angeles, were there unpacked, and thereafter the parts were installed upon the said vessel.

Upon landing, the merchandise was entered under the provisions of section 466 of the Tariff Act of 1930, and duty was assessed by the

[1] C. A. D. 108.

collector at 50 per centum ad valorem as provided in said section. Appellee protested against such classification and assessment with duty, claiming that the merchandise should be classified under paragraph 372 of said act and assessed with duty at the rate of 27½ per centum ad valorem, or under paragraph 397 at the rate of 45 per centum ad valorem.

Upon the trial before the Customs Court, Third Division, the only evidence introduced was the testimony of a witness on behalf of the importer, one Edward A. Zereckh, who testified as follows:

Q. What is your occupation, Mr. Zereckh?—A. Customs broker.
Q. How long have you been engaged in that occupation?—A. 25 years.
Q. With what concern?—A. Guy B. Barham & Company.
Q. Will you examine the papers the subject of this protest and state whether or not you are familiar with them?—A. Yes; I am.
Q. Will you please state the reasons why the entries under section 466 were made?—A. It was the opinion of everyone at the time of importation that the shipments were dutiable at 27½%, but as it was repairing parts of machinery brought into the country on the vessel that it was destined for the question arose as to whether or not it should be entered under section 466 as repairs required to return the vessel to the United States.
Q. Were these parts installed in the vessel or were they packed as freight?—A. They arrived as freight in the original packages.
Q. They were parts of the Diesel engines operating the vessel in question?—A. They were.
Q. Do you know what happened to that merchandise after the vessel arrived and the entry was made?—A. To my knowledge the cases were landed on the dock, unpacked, and the spare parts installed in the vessel.
Q. In that particular vessel?—A. That is, installed as repairs in the vessel.
Mr. GOTTFRIED. That is all.

Cross-examination by Mr. Spector:

X Q. In other words, these parts were not essential for the engines?—A. Not for the voyage.
X Q. They were just put in there as spare parts for the machinery?—A. To my knowledge it was a predetermined order.

The Customs Court, Judge Evans dissenting, sustained the claim of the protest that the merchandise was dutiable under paragraph 372 at the rate of 27½ per centum ad valorem and entered judgment accordingly. From the judgment so entered this appeal was taken.

Before the Customs Court appellee apparently abandoned the claim for classification under paragraph 397 and this claim was not pressed before us. Therefore the only provisions of the tariff act here involved are section 466 and paragraph 372, the pertinent portions of which read as follows:

SEC. 466. EQUIPMENT AND REPAIRS OF VESSELS.

Sections 3114 and 3115 of the Revised Statutes, as amended by the Tariff Act of 1922, are amended to read as follows:

"SEC. 3114. The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a

foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vesssl in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country; and if the owner or master of such vessel shall willfully and knowingly neglect or fail to report, make entry, and pay duties as herein required, such vessel, with her tackle, apparel, and furniture, shall be seized and forfeited. For the purposes of this section, compensation paid to members of the regular crew of such vessel in connection with the installation of any such equipments or any part thereof, or the making of repairs, in a foreign country, shall not be included in the cost of such equipment or part thereof, or of such repairs.

"Sec. 3115. If the owner or master of such vessel furnishes good and sufficient evidence—

"(1) That such vessel, while in the regular course of her voyage, was compelled, by stress of weather or other casualty, to put into such foreign port and purchase such equipments, or make such repairs, to secure the safety and seaworthiness of the vessel to enable her to reach her port of destination; or

"(2) That such equipments or parts thereof or repair parts or materials, were manufactured or produced in the United States, and the labor necessary to install such equipments or to make such repairs was performed by residents of the United States, or by members of the regular crew of such vessel,

then the Secretary of the Treasury is authorized to remit or refund such duties, and such vessel shall not be liable to forfeiture, and no license or enrollment and license, or renewal of either, shall hereafter be issued to any such vessel until the collector to whom application is made for the same shall be satisfied, from the oath of the owner or master, that all such equipments and repairs made within the year immediately preceding such application have been duly accounted for under the provisions of this and the preceding sections, and the duties accruing thereon duly paid; and if such owner or master shall refuse to take such oath, or take it falsely, the vessel shall be seized and forfeited."

Par. 372. * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: *Provided,* That parts, not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: *Provided further,* That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

Two questions present themselves for our determination:

1. The proper construction of section 466.

2. Whether the parts of Diesel engines here involved may be regarded under the facts of this case as "equipments" or "repair parts" for the vessel *California Standard.*

With respect to the construction of section 466 it is evident that it is not either happily worded or punctuated, but we are of the opinion that only one construction is possible without doing violence to the language used. That construction becomes clear if we omit the portions of the section not pertinent to the question here involved, so as to read: "The equipments, or any part thereof, including boats, purchased for * * * a vessel documented under the laws of the United States to engage in the foreign or coasting trade * * * shall, on the first arrival of such vessel in any port of the United

States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country * * *."
It is clear, we think, that the word "purchased" means purchased in a foreign country.

Indeed, appellee's counsel in their brief accept this construction, for it is there stated:

The language of the statute under consideration justifies the conclusion of the court below. Section 466 provides for "The equipments, or any part thereof, * * * purchased for * * * a vessel documented under the laws of the United States * * * shall, on the first arrival in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country * * *. For the purpose of this section, compensation paid to members of the regular crew of such vessel in connection with the installation of any such equipments or any part thereof * * * shall not be included in the cost of such equipment or part thereof * * *."

If the Congress had not contemplated the dedication or appropriation of such equipment by installation on the vessel, there would be no need to include the labor of installation.

It is our opinion that the section clearly provides that equipment purchased abroad for a vessel documented under the laws of the United States shall, at least if transported to the United States upon such vessel, be subject to duty at 50 per centum ad valorem.

While we consider that there is no such ambiguity in the provisions of section 466 as to warrant resort to legislative history of the section to aid in its construction, it is interesting to note that such history supports our construction of the section.

When H. R. 2667, which later became the Tariff Act of 1930, was reported from the Committee on Ways and Means of the House of Representatives, a report was made upon the bill, which report contained the following statement:

Sections, 3114 and 3115 of the Revised Statutes are set out in section 466 of the 1922 Act as amended by that Act. Section 3114 places a duty of 50 percent on the cost of equipment and repairs purchased for or made upon vessels of the United States in foreign countries. * * *

The Committee on Finance of the Senate, in reporting the bill, stated:

Section 466 of the 1922 Act amended sections 3114 and 3115 of the Revised Statutes, relating to equipment and repairs of vessels. Section 3114 as so amended provided for the payment of a duty of 50. percent of the cost of equipment purchased or repairs made in a foreign country by a United States vessel. * * *

The House bill carries an additional amendment exempting from duty equipment purchased or repairs made in a foreign port, where it is shown that the equipment or repair parts were manufactured in the United States and were installed by American labor. This provision has been retained in the bill as reported by your committee.

However, appellee's position apparently is that equipment purchased abroad for a vessel documented under the laws of the United States, in order to be dutiable under section 466, must have been

installed upon such vessel while without the jurisdiction of the United States. We find nothing in the section to warrant this construction. We do not think that we are at liberty to read into the section the words "installed upon the vessel while outside the jurisdiction of the United States," which we would be compelled to do according to appellee's construction of the section.

It is true that the section contemplates that the equipment purchased abroad for a vessel will be transported to the United States in that vessel, as was done in the case at bar, and it may be that if the involved merchandise had been imported in another vessel it would not have been dutiable under section 466. In passing we would observe, however, that if equipment is purchased abroad specially designed to be used upon a particular ship, as the involved merchandise apparently was, and transported to the United States in another vessel, it is at least open to argument whether such merchandise would not be dutiable under section 466.

However this may be, that question is not before us, and if the statute has created an anomaly in permitting equipment designed for a particular ship to bear a rate of duty of 27½ per centum if imported in a ship other than the one for which it is designed, we are not permitted to correct that anomaly by overruling the plain terms of the statute and indulging in judicial legislation.

In this connection we deem it appropriate to quote from an opinion by Justice Story, rendered while he was a Circuit Judge for the District of Massachusetts, in the case of *United States* v. *Chain Cable,* 25 Fed. Cas. 391, which case is cited and relied upon by appellee in another connection. The case involved certain chain cable purchased abroad by and for use upon an American vessel and used during its voyage. In holding that the cable was not subject to duty under the laws then existing, the opinion states:

It is possible, that evasions of the revenue laws may sometimes occur, under color of procuring new sails, or rigging, or equipments of our ships in foreign ports; and thus, the party may escape from the payment of the proper duties on the articles thus imported, and introduced into the country. But, the defect, if any, is to be cured by legislation, and not by the courts of law. Until congress shall declare, that the new rigging or equipments of a ship, procured abroad, are dutiable, or not to be landed without a permit, it seems to be difficult to conceive, how courts of justice can treat them as "goods, wares, or merchandise," within the meaning of the general revenue laws. * * *

So in the case at bar evasion of the provisions of section 466 may possibly be accomplished by importing equipment in a ship other than that for which it is designed, but the defect, if any, to use the language of Justice Story, "is to be cured by legislation, and not by the courts of law." We therefore conclude that if the involved merchandise was equipment for the vessel *California Standard*, it was dutiable under the provisions of section 466.

As to whether these parts of Diesel engines were equipment for said vessel, such question has in principle been determined by this court in the case of *United States* v. *Richard & Co.*, 8 Ct. Cust. Appls. 231, T. D. 37496. That case involved the dutiability of spare parts for Diesel engines, which engines had been installed upon battleships built in the United States for the Argentine Republic. The spare parts there in issue had been brought to the United States in a merchant vessel. They were classified under the nonenumerated paragraph (199) of the tariff act of 1909, and were claimed to be free of duty under section 5 of the Panama Canal Act of August 24, 1912, as articles necessary for the equipment of vessels built in the United States. The opinion discussed extensively the meaning of the word "equipment" as used in connection with vessels, and with respect to the spare parts of Diesel engines there involved, stated:

We hold that they were a necessary part of the outfit and equipment of the respective vessels on which they were placed and therefore entitled to free entry.

We think that, in principle, the parallel between that case and the case at bar is very close. There parts of Diesel engines were imported and thereafter placed upon vessels constructed in the United States; nevertheless they were held to be a part of the equipment of such vessels. In the case at bar parts of Diesel engines were brought into the United States and thereafter installed upon the vessel which transported them, and they likewise were equipment of such vessel.

The fact that the parts were transported upon the vessel *California Standard* as ordinary freight we regard as wholly immaterial. The manner of transporting them, which was wholly at the option of appellee, cannot affect their dutiable character.

We have confined our discussion of the character of the merchandise to the question of whether it should be held to be *equipment* for the vessel *California Standard*, but we think we would be compelled to come to the same conclusion if the merchandise were held to be "repair parts," which it certainly was, even if not technically *equipment*.

We will conclude with one further observation. The testimony shows that the cases containing the involved merchandise were unloaded on the dock, there unpacked, and the merchandise returned to and installed upon the vessel. It would appear that this procedure was useless and unnecessary, no explanation being given of why the merchandise was unloaded, unless possibly with the expectation of avoiding the provisions of section 466. Whatever the reason may have been, such procedure, under the facts in this case, could not affect the dutiable character of the merchandise.

For the reasons herein stated, the judgment appealed from is *reversed*.

BLAND, Judge: I concur in the conclusion. I know of no reason for reciting legislative history if there is no ambiguity.