## Case No. 15,931a.

UNITED STATES v. ONE HEMPEN CABLE AND ONE HEMPEN HAWSER.

[41 Niles' Reg. 273.]

District Court, D. Massachusetts. Oct. 24, 1831.

CUSTOMS DUTIES—VIOLATION OF COLLECTION LAWS — OMISSIONS FROM MANIFEST — LIBEL OF FORFEITURE — CERTIFICATE OF PROBABLE CAUSE OF SEIZURE.

[1. Articles, such as cables and hawsers, purchased abroad, in the course of the voyage, for the bona fide purpose of substituting them, as part of the ship's equipment, for articles lost or deteriorated by use, are not subject to duty, and need not be entered in the manifest.]

[2. Hempen cables and hawsers are not "vessel and cabin stores," within the meaning of the twenty-third section of the collection law (1 Stat. 644); nor are they "sea stores," within the meaning of the forty-fifth section. These expressions mean stores or provisions laid in for cabin or steerage, for officers, passengers, or crew; or, if capable of further extension, can only be applicable to articles of consumption which perish in the using, and not to the tackle and apparel of a ship, the sails, rigging, cable, or anchors.]

[3. The court will grant to the collector a certificate of probable cause of seizure where it appears that the seizure was made in good faith, in the belief that the law was being violated, and after consultation with the surveyor, naval officer, and district attorney, and recurrence to instruction from the treasury department in cases considered analogous.]

[This was a libel of forfeiture against one hempen cable and one hempen hawser, which were seized by the collector because they were not entered on the manifest of the vessel.]

A. Dunlap, U. S. Dist. Atty.
Charles G. Loring, for claimants.

DAVIS, District Judge. These articles, brought into the port of Boston, in the brig Moscow, from Cronstadt, were seized on the 14th of September last by the collector of the district of Boston and Charlestown, on the ground, as the libel alleges, that they belonged to, or were consigned to the master, mate or crew of that vessel, and were not described or included in the manifest or manifests of the cargo, by which, and by force of the statute of the United States in such case made and provided, it is alleged that they have become forfeited to the uses specified in the statute.

The claimants in their answer on oath declare that they are the lawful owners of the brig Moscow; that she arrived at Boston on the 5th of September last, from Cronstadt, having in her outward voyage, first proceeded to Matanzas, in the Island of Cuba, the said John Norris, one of the joint owners, being the master; that, on the passage to Matanzas, by a casualty which they particularly describe, part of the stream cable—about twenty-five fathoms—was necessarily cut away and lost, with the anchor to which it was attached, and that, from this circumstance, as well as from the age, long-continued use and decay of that cable, it became necessary to procure a substitute, which was accordingly done by the master of the brig, at Cronstadt, for the necessary use of the vessel, and for no other purpose; that, in like manner, a substitute was there provided for the hawser, belonging to the brig—the old hawser, it is averred, being strained, weak and unfit for use; that said new stream cable and hawser were taken on board said brig at Cronstadt, as part of her ground tackle and equipment, and solely for the purpose of being used as such; that they were purchased in the ordinary manner for immediate use, were stowed in that part of the vessel, where the stream cable and hawser, in actual service, are always stowed and kept; that during the passage from Cronstadt to Boston there was no other stream cable nor hawser on board of said vessel, used or intended to be used, as a part of her ground tackle, or equipment, nor kept nor stowed in the place where such cable and hawser are or ought to be stowed and kept, and that in all particulars the same were intended to be, and were kept to be used, as being the ordinary tackle and furniture of the vessel; the stream cable and hawser, thus purchased, intended and applied, they aver to be the same that are mentioned in the libel; they deny that those articles belonged to, or were consigned to the master, mate or crew of the vessel, saving the interest of the master as part owner, or that they were brought or imported in said vessel as merchandise, or contrary to law; and in answer to an interrogatory propounded with the libel, the respondents further declare, that said cable and hawser were purchased by said Norris, in his capacity as master and part owner of said brig, on the 14th of June last, at Cronstadt, and that they belonged to the claimants, as owners of that vessel, being, as they aver, part of her necessary tackle and equipment.

Numerous witnesses were examined, at the hearing, as to that portion of the claimants' averments respecting the insufficiency of the old stream cable and hawser, and as to the necessity or expediency of procuring new substitutes for the proper use of the vessel in the accomplishment of her voyage; and I am fully satisfied, from that examination, and from the testimony of the mate, contained in his deposition, that the claimants' averments in their defence are true. The loss of so considerable a portion of the stream cable would alone, in my opinion, justify the

purchase of a new one, and entitle such substitute to be considered as part of the tackle and furniture of the vessel, and as such, free of duties, and the decided testimony given of the condition of the hawser, leaves no doubt of the propriety of procuring a substitute for that article also. The articles libelled being of this character, truly and fairly part of the ship's furniture or equipment, it was not requisite to insert them in the manifest. It is argued, on the part of the government, that, in the true construction of the statute, those articles would come under the denomination of sea stores. This would appear to me a strained interpretation of the statute, and the uniform practice, from the earliest date of our maritime and fiscal regulations, gives no support to such construction. "Vessel and cabin stores," is the expression in the 23d section of the collection law; in the 45th section, it is, "sea stores of a ship or vessel." These expressions are understood to mean, and naturally do mean the stores or provisions laid in for cabin or steerage, for officers, passengers or crews, or if further extended, can only be applicable to articles of consumption, perishing in the using, and not to the tackle and apparel of the ship, the sails, rigging, cables or anchors. These are to be considered as attached to the ship, and so belonging to the ship that it is no more necessary to include them in the manifest than the ship itself. The sails and tackle, says Lord Holt, in the case of Edmonson v. Walker, are part of the ship— and under the circumstances of that case, were so considered, though they were on the shore. 1 Show. 177. It may be remarked, that if the articles, in question in this libel, are to be considered as falling under the denomination of vessel's stores, the prosecution could not properly be founded on the 24th section of the collection law which it recites, but on the 45th section. It being satisfactorily proved, that these articles were purchased and intended for the vessel, by the master, they became thereby the property of the owners; and even if they constitute an unnecessary supply, under the circumstances in which the vessel was placed, and so to be considered as merchandise imported, still, being the claimants' property, they would not be liable to forfeiture by the section of the act, unless it were for the master's proportion, he being likewise a part owner of the vessel, it is unnecessary, in this case, to express or form an opinion. On other distinct ground, already expressed, from the suitable and proper connection of the stream cable and hawser with the vessel, as part of her tackle and apparel, I have no hesitation in decreeing that they be restored to the claimants.

It remains to be considered whether the certificate of reasonable cause shall be entered for the collector's protection, who may be otherwise exposed to a prosecution for an exercise of official duty. There were, it appears, some circumstances attending this transaction, producing a degree of excitement which had not entirely subsided in the interval between the seizure and the hearing; and counsel for the claimants has made a strong appeal to the court, urging a denial of the certificate; at the same time, the generous eulogy which he bestows on the collector, in which he is understood to express the prevailing sentiment of the commercial community, would seem to render the apprehension of unworthy or improper motive in this seizure, improbable, and not to be imputed to the collector without the fullest evidence. That mutual courtesy between the officers and the merchant, without relinquishment of right on one side, or dereliction of duty on the other, which commenced in this collection district, with the venerable General Lincoln, has been laudably continued with his successors, and the present collector is understood fully to estimate the high considerations which recommend such dispositions and deportment, and to exhibit the influence of such sentiments in official transactions, interesting from their magnitude, and often perplexing in their character, have proceeded to a satisfactory conclusion, in a manner, and with a temper, which it is gratifying to contemplate. I may ask allowance for grateful indulgence in these recognitions. The duties of the situation in which I have been placed, through a greater part of the period to which I have adverted, have been greatly relieved by the dispositions which have prevailed in this highly commercial district, in which a great portion of the business of this court usually originates. The incident controversies and concerns of trade and revenue would have been rendered particularly irksome, but from a manifestation of a liberal spirit, which looked at objects in their substantial character and relations, and seldom gave to the legal arena any discomposing features.

It seems to have been intimated, or imagined, that the collector was influenced by some improper feeling or suspicion in reference to the owners of the Moscow or some one of them. I see no evidence of this. Capt. Rich, the senior owner, and who had the principal agency in the intercourse with the collector, on this subject, doubtless, fully believed that the Moscow was no more than suitably and reasonably supplied with articles which were necessary or important for her use, and for her safe navigation, on her homeward voyage. The collector, it should be supposed, was equally honest and sincere in the belief, that the vessel was sufficiently well found, for the purpose of her voyage, in what is called ground tackle, without the supply of the new stream cable and hawser; and indirect or unworthy motives, on either side, should not be hastily adopted and entertained. While the addition of necessary articles of ship's furniture,

abroad, free of duty, from their attachment to the ship, is admitted, it is apparent that the practice is liable to abuse. In England, we find it became necessary to guard against such abuses by statute provisions. A law imposing duties on foreign sails or sailcloth was only applicable, in terms, to such as should be brought into the kingdom by way of merchandise. "But this act was evaded," says the authority (Parker, Rev. Cas.) to which I refer, "for it requiring foreign sails or sailcloth to be brought in by way of merchandise, British ships used to go upon voyages with old worn-out sets of sails, and buy sets of sails abroad; and to put a stop to this evasion, the act 19 Geo. II. c. 27, enacts that every master of a ship, belonging to any of his majesty's subjects, navigated with any foreign made sails on board, shall make an entry and report of them, and that every ship built in Great Britain, or his majesty's plantations in America, on her first setting out, should be furnished with a. set of sails manufactured in Great Britain." We have no statute provisions expressly framed or calculated for keeping an admitted practice, of liberal and indulgent character, within fit and reasonable limits; and an excess in procuring, abroad, articles professedly for vessel's use, and introducing them free of duty, can only be obviated or prevented by proper notice on the part of officers. of cases which may occur, falling under their cognizance.

In the present instance there was no sudden movement on the part of the collector. The ground tackle of the Moscow, on her departure from the United States, consisted of a chain cable, a hempen bower, and stream cable, and hawser. She returned with the addition of a new hempen bower cable, a stream cable and hawser, and the old articles of corresponding description still remained on board. The collector was of opinion that there was an excess in this additional supply, and that all the articles, thus purchased and taken on board at Cronstadt, should be entered, as liable to duty. The ultimate seizure of the stream cable and hawser, was the result of several days' deliberation, and after consultation with the surveyor and naval officer and the district attorney, and recurrence to instructions from the treasury department, in cases considered analogous. In finally determining on the seizure the bower cable was omitted, because it appeared it had been bent for use, as occasion should require, in the passage from Cronstadt. In the seizure of the articles, which will now be decreed to be restored, there was mistake in fact or in law. If the facts had sustained the collector's opinion, that the articles were not necessary for the vessel's use, and it still should have clearly appeared that they belong not to the master, mate or crew, they were not liable to condemnation and seizure. In such case, the seizure would be under a mistake as to the law, unless it should be thought maintainable for the proportion belonging to one of the part owners, who was master of the vessel. But it is of little importance to inquire, particularly, whether the mistake were in fact or in law, according to the rule of law on this subject by which we are governed. Chief Justice Marshall, in delivering the opinion of the supreme court of the United States, in the case referred to by the district attorney (U. S. v. Riddle, 5 Cranch [9 U. S.] 311), observes that as the construction of the law was liable to some question, the court would suffer the certificate of probable cause to remain. "A doubt," it is added, "as to the true construction of the law, is as reasonable a cause for seizure as a doubt respecting the fact." In the present case, the collector, as appears to me, acted with a sincere conviction that he was in the correct and requisite performance of his official duty, without any culpable or unworthy motive. I shall therefore accompany the decree of restoration, with a certificate of reasonable cause.