ATLAS MARINE SUPPLY CO. *v.* UNITED STATES (No. 4329) [1]

United States Court of Customs and Patent Appeals, April 14, 1941

*Lawrence A. Harper* (*Abraham Gottfried* of counsel) for appellant.

*Charles D. Lawrence,* Acting Assistant Attorney General (*Joseph E. Weil,* special attorney, of counsel), for the United States.

[Oral argument February 5, 1941 by Mr. Lawrence; submitted on brief by appellant]

[1] C. A. D. 165.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and JACKSON, Associate Judges [2]

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, overruling the protest of the importer whereby it sought recovery of duties assessed and collected by the Collector of Customs at the port of Los Angeles, Calif., upon certain metal drums containing lubricating oil.

There is no controversy respecting the following facts:

September· 8, 1938, appellant made warehouse entry of drums containing oil. The entry stated that the oil was a raw product of Russia, manufactured in Denmark, and that the drums containing the oil were of foreign manufacture. On different dates, ranging from October 10, 1938, to April 4, 1939, warehouse withdrawals were made of drums and the oil contained therein, and same were delivered as ships' supplies to various vessels of foreign registry.

The oil *per se* concededly was classifiable under paragraph 1733 of the Tariff Act of 1930 and, even had it been entered for domestic consumption, would have been entitled to entry free of any duty imposed by that act. However, had it been entered for domestic consumption, it, apparently, would have been subject to a tax, defined as an excise tax, under the provisions of section 601 (c) (4) of the Revenue Act of 1932. Section 601 (b) of the latter act provided that the tax which the section imposed should "be treated for the purpose of all provisions of law relating to the customs revenue as a duty imposed by such Act," with certain exceptions not necessary to be noted here.

The collector permitted the withdrawal of the oil from bonded warehouse free of the excise tax because of the provision of section 309 (a) of the Tariff Act of 1930, as amended by section 5 (a) of the Customs Administrative Act of 1938, which, so far as here pertinent, reads:

SEC. 309. SUPPLIES FOR CERTAIN VESSELS AND AIRCRAFT.

(a) EXEMPTION FROM CUSTOMS DUTIES AND INTERNAL-REVENUE TAX.— Articles of foreign * * * manufacture or production may, under such regulations as the Secretary of the Treasury may prescribe, be withdrawn from bonded warehouses, bonded manufacturing warehouses, or continuous customs custody elsewhere than in a bonded warehouse free of duty or internal-revenue tax for supplies (not including equipment) of vessels * * * actually engaged in foreign trade * * *.

That action of the collector is not at issue.

The issue relates solely to the drums in which the oil was contained. Upon them when they, with their contents, were withdrawn

---

[2] LENROOT, Judge, did not participate in the consideration or decision of this case.

from bonded warehouse, the collector assessed duty (which was then paid under protest) at the rate of 25 per centum ad valorem, he taking the view that they were subject to such duty under the provisions of paragraph 328 of the Tariff Act of 1930, the pertinent part of which reads:

PAR. 328. * * * cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty; * * * 25 per centum ad valorem; * * *.

The protest filed on behalf of importer made alternative claims but the claim finally relied upon below, and here, was expressed in an amendment to the protest as follows:

Or that all the protested merchandise is exempt from duty by virtue of Section 309 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, inasmuch as the merchandise was sold for use as ships stores or as the usual containers for ships stores or supplies on vessels engaged in foreign trade or trade between the Atlantic and Pacific ports of the United States.

The trial court summarized the evidence in the case as follows:

At the trial of the case the manager of the plaintiff company, a ships' chandler supply company, testified that he had personally sold the oil contained in the drums in question to various foreign vessels for use as ships' supplies; that the oil was contained in 50-gallon drums and was withdrawn from the warehouse and delivered directly to the various vessels; that the drums consisted of single trippers composed of light sheet metal which after one handling are very seldom fit for the same use; that they are fitted with a bung and are emptied largely by that means although he had seen the top destroyed in emptying; and that within his knowledge such drums have been used as the ordinary containers of lubricating oil for 10 years. The witness further testified that on board the vessels the oil is emptied into the ships' tanks until filled and the remainder of the drums are stored in the hold of the vessels; that none of the drums are ever returned to him and he was of the opinion that the drums are taken from the United States by the vessels after emptying.

The court held that the evidence established that the drums at issue were the usual and ordinary containers of merchandise such as the oil imported in them. That holding is not challenged by the Government, but the Government contended, and the trial court, in effect, sustained the contention, that the presumption of correctness attending the collector's classification had not been overcome because appellant failed to prove that the drums were destroyed in the removal of their contents, or that the drums were incapable of further use as containers of merchandise. The case of *Balfour, Guthrie & Co., Ltd.* v. *United States*, 27 C. C. P. A. (Customs) 17, C. A. D. 55, affirming the judgment of the United States Customs Court (C. D. 58), was cited in the decision below and is relied on by the Government here.

It seems to us that the decision of the trial court in this case was based upon an erroneous theory regarding the issue which is actually involved.

The question, as we view the case, is whether the drums were ships' supplies, laden on the vessels as such. If so, the fact that under certain circumstances they were subject to duty becomes immaterial, because, obviously, it was the intention of Congress to permit the withdrawal from bonded warehouses of merchandise used as ships' supplies (not including equipment) free of duty or tax, whether such merchandise be taxable or free under other provisions of the tariff and revenue acts.

We find that there have been rulings by the Treasury Department and a decision of the United States Customs Court respecting the matter of containers for ships' supplies to which we deem it proper to refer. In this connection, it may be said that there was no amendment of section 309 (a) by the Customs Administrative Act of 1938, which seems to affect the issue before us.

The first department ruling respecting the subject matter to be announced in the form of a Treasury decision appears to have been that embraced in T. D. 47259 (5), 66 Treas. Dec. 255, 256, issued September 15, 1934, reading:

(5) *Supplies for vessels—Containers.*—Ordinary containers, the only purpose of which is to facilitate the transportation of their contents, are embraced in the term "supplies" as used in section 309 (a), Tariff Act of 1930, and section 630, Revenue Act of 1932.

Containers which have a value either for further use as containers or for a different purpose after having been emptied of their contents, and which are not the ordinary and usual containers, are not included in the term "supplies" when used as coverings for supplies withdrawn under the provisions of section 309 (a), Tariff Act of 1930, or section 630, Revenue Act of 1932. Bureau letter to collector of customs, New York, N. Y., July 5, 1934. (101026.)

A second ruling was embraced in T. D. 48447 (13), 70 Treas. Dec. 136, 138, issued July 20, 1936. It reads:

(13) *Vessel supplies—Containers.*—The fact that drums may be suitable for reuse as containers after having been emptied of their contents or may have a value for a different purpose does not make them dutiable when containers of supplies are withdrawn under section 309, Tariff Act of 1930, or section 630, Revenue Act of 1932, as amended, if the drums are in fact usual containers of the contents and are not unusual materials, articles or forms for containing such articles. Bureau letter to collector of customs, New York, N. Y., June 29, 1936. (101026.)

On January 11, 1937, there was a decision by the United States Customs Court, in the case of *Guy B. Barham Co.* v. *United States*, T. D. 48761, 71 Treas. Dec. 81, in which that tribunal held that drums found to be the "ordinary and usual containers of the oil" withdrawn and sold as ships' supplies were subject to duty under the provisions of paragraph 328, *supra*. It would seem from the decision there that the facts of the instant case are analogous to the facts of that case, but we are unable to ascertain from the opinions (there was a concurring

opinion.) just how the issues were there presented. The case was not appealed to this court.

The decision made no reference to the departmental rulings embraced in T. D. 47259 (5), *supra*, and T. D. 48447 (13), *supra*. Following it, however, the Treasury Department on May 17, 1937, issued T. D. 48967 (6), 71 Treas. Dec. 773, 775, in which it was stated "T. D. 47259–5 and T. D. 48447–13 overruled in effect by T. D. 48761," and collectors were advised that duty should be assessed on containers, etc. It is deemed unnecessary to quote T. D. 48967 (6) in full, it being sufficient to say that it apparently covers containers such as the drums here involved.

The decision of the trial court in the instant case, rendered June 21, 1940, made no reference to the decision in the *Barham & Co.* case, *supra*, nor did it refer to any of the departmental rulings, except T. D. 47259 (5), *supra*, which, apparently, it regarded as being in effect at the time of the transactions here involved. We assume that neither the *Barham & Co.* case, *supra*, nor the subsequent departmental ruling was brought to its attention. They were first brought to our attention by counsel for the Government during his oral argument here. Obviously, the ruling embraced in T. D. 47259 (5), *supra*, and that embraced in T. D. 48447 (13), *supra*, had been supplanted at the time of the trial court's decision in the instant case, by T. D. 48967 (6), *supra*, so far as the Treasury Department was concerned, and it is a fair assumption that the collector (whose answer to the protest, if he made any, is not contained in the record) was guided by the latter Treasury decision in making the assessment here involved.

In its decision in the *Barham & Co.* case, *supra*, the trial court cited and seemingly relied upon the cases of *United States* v. *Marx*, 1 Ct. Cust. Appls. 132, T. D. 31210, and *Colby & Co.* v. *United States*, 3 Ct. Cust. Appls. 234, T. D. 32542. In the instant case the trial court, as has been stated, cited the *Balfour, Guthrie Co.* case, *supra*, wherein we cited and held controlling the decision in the *Colby & Co.* case, *supra*.

No one of the cases cited in either of the decisions involved any question relative to ship's supplies, and hence we do not regard any one of them as being controlling of the issue now before us, which, as has been said, is whether the drums are ships' supplies, the withdrawal of which from bonded warehouses without the payment of duty is authorized by section 309 (a), *supra*.

We do not find that there has ever been any statutory definition of the terms "ships' supplies" and "ships' stores." The terms have been judicially construed, as used in different tariff acts, and in a number of cases the meaning of the term "equipment" has been involved. The statutory term before us is "supplies," and it may be

noted that express provision is made that equipment shall not be included in the supplies covered by the section.

There was no suggestion at any time during the trial of the instant case that the involved drums are embraced in the term "equipment," but under our theory as to the issue of the case we deem it proper to consider that question.

The most recent case before us involving the terms "equipment" and "supplies" was that of *H. E. Warner, Trustee, etc.,* v. *United States,* 28 C. C. P. A. (Customs)143, C. A. D. 136, decided June 24, 1940. We there held, citing various authorities, the principal one being *Southwestern Shipbuilding Co.* v. *United States,* 13 Ct. Cust. Appls. 74, T. D. 40934, that certain plates, cups, and saucers, designated as "crockery," were dutiable as equipment under section 466 of the Tariff Act of 1930 rather than free of duty as supplies under section 446 of that act. Section 309 (a), *supra,* was not involved in that case.

The *Southwestern Shipbuilding Co.* case, *supra,* arose under the 1913 tariff act. By the provisions of paragraph J, subsection 5 of section IV of that act, materials of foreign production necessary for the construction of naval and other designated vessels in the United States and "all articles necessary for their outfit and equipment" were permitted to be imported in bond and eventually admitted duty free upon proof of their use for the purposes named. No provision such as section 309 (a), *supra,* was involved in that case.

In our decision there we treated the terms "ships' stores" and "outfit and equipment" as having the same meaning, and distinguished them from the term "sea stores," saying (after quoting various definitions and authorities) *inter alia:*

Taking into account the definition given by the Naval Board and the Treasury Department of "equipment," the several definitions given by the Treasury Department of "outfit and equipment," and the ordinary meaning of that term, we are satisfied that portable articles and things necessary or appropriate for the protection or befitting comfort of those on board, or for the proper navigation or safety of a vessel, and not sea stores or a part of the hull or propelling machinery, come within the designation "outfit and equipment." Furniture and furnishings necessary or suitable to make the vessel habitable and reasonably comfortable for those on board, considering the service in which the vessel is engaged or is to be engaged, things necessary to keep the vessel in order and repair and to safeguard as far as possible crew and passengers from the perils of the sea are therefore free of duty under the provisions of paragraph J, subsection 5. Sea stores—that is to say, a reasonable quantity of provisions and supplies for the consumption, sustenance, and medical needs of crew and passengers during the voyage—are excluded from that paragraph for the reason that the distinction between sea stores and ship's stores or outfit and equipment has been for a long time judicially and legislatively firmly established. See sec. 22 of the act of August 4, 1790, 1 Stat. 161; sec. 17, act of March 3, 1897; protest of *Cunard Steamship Co.,* T. D. 21324; protest of *Ali,* T. D. 22433; *United States* v. *One*

*Hempen Cable*, 27 Fed. Cas. 264, 265; *United States* v. *24 Coils of Cordage*, 28 Fed. Cas. 276–278; *United States* v. *23 Coils of Cordage*, 28 Fed. Cas. 290–292.

In our decision there an extensive *eo nomine* list of articles held to be duty free under the provisions of the 1913 act as ships' stores or outfit and equipment was set forth. A careful study of that list does not disclose any article which would seem to have the same use as that of the drums involved here, and at any rate, as has been said, we there treated *ships'* stores and equipment as having the same meaning, so far as the provision of the 1913 act there involved was concerned.

In our decision in the *Warner* case, *supra*, we pointed out that "no claim is made here * * * that the 'term outfit and equipment,' considered by this court in the case of *Southwestern Shipbuilding Co.* v. *United States, supra*, differs in meaning from the term 'equipment,' as used in section 466, *supra*," and we held "outfit" and "equipment" to be practically synonymous. We further said:

It is true, as argued by counsel for appellant, that "sea stores," as distinguished from "ship's stores" or "ship's equipment," are "consumable supplies." However, we think it is clear, as is plainly stated in our decision in the *Southwestern Shipbuilding Co.* case, *supra*, that "consumable supplies" or "sea stores" are "supplies for the consumption, sustenance, and medical needs of the crew and passengers during the voyage."

We are of opinion that the "crockery" here involved is within the meaning of the term "equipment," as used in section 466, *supra*, and that, under the circumstances of this case, it * * * [was] properly held by the trial court to be subject to duty under the provisions of that section.

It is our view that in the instant case, which is the first case to come before us involving section 309 (a), *supra*, it is necessary to consider and determine the meaning of "supplies" as distinguished from "equipment" because, for the purposes of that section, Congress made a distinction.

We observe that each of the warehouse withdrawals made out on customs form 7506, the form prescribed by the regulations (art. 464, Customs Regulations of 1937), carried, above the signature of the agent who acted in the withdrawal, the statement:

I truly declare that the above-described goods are to be used for the purpose stated above [ship supplies or stores], and in the manner prescribed by law and regulations, and if exported that they will not be relanded in the United States.

Each of the withdrawals shows also a certificate by an inspector to the effect that the goods were laden under his supervision and each has a statement signed by a marine clerk reading "The goods described in this withdrawal were entered on list of ship's stores of the vessel named hereon." In each instance the drums were listed separately from the oil and in each instance the duty seems to have been paid on the drums on the date of withdrawal.

The oil contained in the withdrawn drums concededly was embraced in the term "supplies" as that term is used in section 309 (a), *supra*. It became such, not because of its inherent character, but because of its withdrawal for a particular use. Differently disposed of (as, for example, by withdrawing it from warehouse and entering it for domestic consumption), it would have had a different tax status. It is easy to visualize a large variety of articles which, when withdrawn as ships' supplies, have a like status from a customs or tax standpoint.

It is our view that the taxable status of the here-involved drums must be determined upon the same basis as that of the oil which they contained—that of use—and that in considering them for this purpose reason dictates that their relationship to their contents and their use in connection with same be regarded. They were imported, stored in warehouse, withdrawn from warehouse, and landed on the vessels with the oil in them. The evidence indicates that in some instances the oil was emptied from them into the ships' tanks before the ships sailed, and that in some instances they were carried away in their filled condition. The natural presumption is that, when carried away filled, their contents were drawn upon as needed for fuel on the voyages. Containers of some character were essential.

The drums here involved were the ordinary and usual containers, and, in view of their relationship to their contents and the use made of them in connection with such contents, we do not regard them as being "equipment" in the sense of section 309 (a), *supra*, but as "supplies" not included in "equipment." We think they were ships' supplies when delivered, filled, on board the vessels, and that what became of them thereafter is immaterial, so far as this case is concerned, it being established that they were not relanded from the vessels.

This decision, of course, in nowise conflicts with decisions in cases such as *Marx, supra, Colby & Co., supra, Balfour, Guthrie Co., supra,* in which no question of ships' supplies were involved.

For the reasons stated, we are of opinion that the conclusion reached below was erroneous.

The judgment of the United States Customs Court is *reversed*, and the case *remanded* for further proceedings in consonance with the views herein expressed.

BLAND, Judge, Dissenting: Regardless of what should be held as to the drums which were not emptied in this country, I feel sure that the drums which were emptied in this country and carried away and which were not rendered unfit for further use should be held dutiable. Since there is no proof as to the number of such drums, the protest was properly overruled.